# KENADAY *v.* SINNOTT.

ERROR TO AND APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 66.   Argued November 5, 1900. — Decided December 24, 1900.

Final decrees of the Court of Appeals of the District of Columbia in respect of final settlements in the orphans' court, may be reviewed in this court on appeal.

Where, in a controversy between an executrix and next of kin, a decree of the orphans' court approving the final account of the executrix has been reversed by the Court of Appeals on the appeal of the next of kin, and the cause remanded that the account might be restated in accordance with the principles set forth in the opinion of the Court of Appeals, involving a recasting of the entire account, the decree of the Court of Appeals is not final.

The Court of Appeals of the District of Columbia, sitting as an orphans' court, has jurisdiction over the settlement of estates, and controversies in relation thereto between the next of kin and the executrix, and resort to the chancery court is unnecessary.

Certain familiar rules of construction of wills reiterated: (*a*) That the intention of the testator must prevail; (*b*) that the law prefers a construction which will prevent a partial intestacy to one that will permit it, if such a construction may reasonably be given; (*c*) that the courts in general are averse from construing legacies to be specific.

Ademption is the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation or clearly indicative of an intention to revoke.

In this case, in view of the general intention of the testator as plainly shown by the provisions of his will taken together, and of the rules against partial intestacy and against treating legacies as specific, the bequest of money as therein made to testator's widow is construed not to have been a specific legacy but rather in the nature of a demonstrative legacy, and a change, between the date of the will and the death of the testator,

from money into bonds, held not to be an ademption, and so a rule of law rather than a question of intention.

This was a proceeding for the settlement of the final account of Mary Louise Kenaday, as executrix of Alexander M. Kenaday, in the Supreme Court of the District of Columbia, holding a special term for orphans' court business. Alexander M. Kenaday died in the District of Columbia, March 25, 1897, leaving a will, which was probated in the orphans' court of the District at the April term, 1897, and was as follows:

"In the name of God, Amen. I, Alexander McConnell Kenaday, resident of Washington, District of Columbia, being of sound and disposing mind and memory, calling to mind the frailty and uncertainty of human life, and being desirous of settling my worldly affairs and directing how the estates with which it has pleased God to bless me shall be disposed of—after my decease—while I have strength and capacity so to do, do make and publish this last will and testament, hereby revoking and making null and void all other last wills and testaments by me heretofore made. And first, I commend my mortal being to Him who gave it, and my body to the earth, to be buried with [as[1]] as little expense by my executor hereinafter named.

"*Imprimis.* My will is that all my just debts and funeral charges shall be paid out of my estate, by my executrix.

"*Item.* I give, devise and bequeath to my beloved wife, Mary Louise Kenaday, all my real estate, household furniture, and claims pending in the courts in relation to said real estate, to wit:

"House and lot known as No. 507 & 509 on F street, northwest, Washington, D. C., lot No. 2 (east half) of square 482, 30×101.10.

"House and lot known as No. 621 H street, northwest, lot 483 sq. No. 483, 20 × 133 to an alley.

"House and lot known as No. 2006 G street, northwest, lot No. 25 in square No. 103, $20\frac{3}{4}$ ×120 ft. to an alley.

---

[1] Word enclosed in brackets erased in copy.

" And I hereby authorize my wife, as executrix, to convey by deeds in fee simple any or all of said real estate in accordance with the laws of the District of Columbia, under the advice of some competent attorney.

" *Item.* Included as claims pending in the courts are: An account for taxes against the estate of De Vaughn *v.* De Vaughn, unjustly withheld, in charge of my attorney Woodbury Wheeler, Esq. Also, an account for moneys withheld by the trustees of Edwards *v.* Maupin. In charge of my attorney, Frank W. Hackett, Esq., amounting to $1078 with interest at six per cent. per annum from March 7, 1888.

" Also, my business as a claim agent and as publisher of ' The Vedette,' together with all books, papers, files, office furniture, etc., etc. Also, 200 shares of Sutro Tunnel stock and Comstock bonds; also, notes and evidences of indebtedness to me, of more or less value; also, deposits of currency entered on my bank book of the National Metropolitan Bank, amounting to $10,000.00 more or less.

" *Item.* I give, devise and bequeath to my beloved sister Arabella D. Sinnott, residing in New Orleans, La., twelve thousand dollars in registered U. S. 4% bonds, on special deposit in the National Metropolitan Bank.

" *Item.* I give, devise and bequeath to the surviving children of my deceased sister, Martha J. Piles, out of the residue of 4% bonds deposited as aforesaid ($3500.00) as follows: To Mrs. Belle Hubert, $500.00. To Wm. A. Piles, $500.00. To Ida Piles, $500.00. To Eloise Piles, $500.00. To Edith K. Piles, $750.00. To Henry C. Piles, $250.00.

" *Item.* The promissory note for $1100.00 filed with a chattel mortgage in my name in the office of the recorder of deeds, in the District of Columbia, signed by Mrs. Anna Hemenway, shall be cancelled and my executrix may allow Mrs. Hemenway $500 in settlement of her account.

" The bond of the city of Richmond, for $5000.00 bearing 5 per cent interest, payable January and July—(on special deposit with the 4% bonds of the U. S. in the National Metropolitan Bank,) is hereby devised and bequeathed to my wife and executrix.

" The sum of $5000.00 advanced to Wm. C. McGeorge San Francisco, of California, no account of which has been rendered by him, is hereby devoted to the relatives of my wife, and used according to her discretion."

The will was subscribed by the testator, April 3, 1894, in the presence of three witnesses, whose attestation was sworn to.

Mrs. Kenaday duly qualified as executrix, and proceeded in the discharge of her duties. On June 10, 1898, under the order of the orphans' court, the executrix gave notice, appointing Friday, July 8, 1898, as the day for the settlement of her final account as executrix by that court; and for making distribution of the estate under its orders.

Arabella D. Sinnott, William A. Piles, Ida Piles Miller and Belle Hubert appeared and filed their petition, claiming as distributees as the only surviving next of kin and heirs at law of the decedent. They admitted the receipt from the testatrix of their respective legacies under the will, and that another legatee therein named, Edith K. Piles, since dead, had also received her legacy; and said : " The other two legatees, to wit, Henry C. Piles, and Eloise Piles, have not been paid the amounts left them, the said Eloise having died before the testator, Alexander M. Kenaday, and the said Henry C. not having been heard from during the last six years and who your petitioners believe is dead."

The final account of the executrix was made up and filed July 15, 1898, showing that she charged herself with a $5000 bond of Richmond, Va.; $24,500 United States registered bonds; 200 shares stock Comstock Tunnel Company and one certificate of scrip of that company, appraised as valueless; cash found on deposit in National Metropolitan Bank, $810.60; and some items of interest, etc. ; that the Hemenway note had not been found; that she credited herself with disbursements for costs, funeral expenses, etc.; with commissions; and with legacies paid or otherwise satisfied, but not including therein the $810.60 on deposit; and that there was in her hands $9218.76, " consisting mainly of United States bonds and deposits in bank,". which the executrix credited herself with " on account

of the bequest to her by the testator of 'notes and evidences of indebtedness to me,' 'deposits of currency entered on my bank-book,' and other personal estate," and thus balanced and closed the account in full.

The intervening next of kin claimed the balance on the ground that it was residuary estate, and that, there being no residuary clause in the will, it necessarily belonged to them; and filed their exceptions to the account as stated, particularly excepting to the credit of the $9218.76.

A certificate of the Register of the Treasury was filed, to the effect that the records of his office showed that registered four per cent bonds of the United States were standing in the name of Alexander M. Kenaday on the first day of April, 1897, to the amount of $24,500; of which, bonds to the amount of $15,500 bore date April 23, 1889, and bonds to the amount of $9000 bore date April 1, 1895.

The orphans' court, Hagner, J., presiding, on October 11, 1898, overruled the exceptions, and approved the final account of the executrix as stated. All said next of kin thereupon appealed from this order to the Court of Appeals for the District of Columbia.

At the January term, 1899, the cause was heard, the order was reversed with costs, and the cause was remanded to the court below with a direction "that the account be restated in accordance with the principles of the opinion of this court." 14 App. D. C. 1. The mandate having gone down, the account of the executrix was restated as directed by the Court of Appeals, and approved February 10, 1899.

The balance for distribution according to that account was stated to be $8,285.64, and the distributive shares as follows:

"To Arabella D. Sinnott, sister, ½ . . . . . . . . . . . $4142 82
  " Mrs. Belle Piles Hubert, niece, ⅕ of ½ . . . .    828 56
  " Edith K. Piles,          "      "  "  " . . . .    828 56
  " Ida Piles Miller,        "      "  "  " . . . .    828 56
  " William A. Piles, nephew,       "  "  " . . . .    828 56
  " Henry C. Piles,      "          "  "  " . . . .    828 56
  Fractions . . . . . . . . . . . . . . . . . . . . . . . . . . . . .      02
                                                   ———————
                                                   $8285 64"

On the same tenth of February, Mrs. Kenaday was ordered to pay over and deliver to the said Arabella B. Sinnott, through her attorneys of record, the sum of $4142.82, being her distributive share of said estate, taking receipt for the same. Thereupon Mrs. Kenaday appealed in open court to the Court of Appeals from the order of February 10, approving and passing the account, and from the order directing the distribution to Arabella B. Sinnott of the amount therein mentioned as her share. An appeal bond in the sum of $8000 running to Arabella B. Sinnott, to operate as a supersedeas to the order directing the payment to her of $4142.82 was required by order of court, and it was also directed that the penalty of a bond for costs in the matter of the appeal from the order approving the account, filed the same day, be fixed at $50, or in lieu of such bond for costs, a deposit of that amount in cash. A supersedeas bond in the penalty of $8000 was approved, filed and recorded, and $50 was deposited in lieu of bond on appeal from the order approving the account. The Court of Appeals filed an opinion, *per curiam*, that on examining the transcripts of record it was found that the court below had in the restatement of the account followed and observed the mandate sent down on the former appeal, and that it was ordered that the motion made by the said Arabella D. Sinnott to dismiss or affirm the order of the court below approving and passing said final account of the estate, under rule sixteen of the court, be denied, but that the said final order of said court approving and passing said account, the same bearing date the tenth day of February, 1899, on the appeal of the said Mary L. Kenaday, executrix, be affirmed, " the said account appearing to be stated in accordance with the mandate of this court issued on the former appeal." Thereupon judgment was entered April 5, 1899, " that the order of the said Supreme Court in this cause, of February 10, 1899, approving and passing account be, and the same is hereby, affirmed with costs." A writ of error to remove the cause to this court was thereupon allowed by that court, and issued, a supersedeas bond being given and approved. Subsequently the executrix, being in doubt whether the proceedings to obtain a review should be by writ of error, or appeal, prayed an appeal, which

was granted in the words : " On motion of Mary L. Kenaday, executrix, by her attorney, and it appearing to the court that the practice in cases exactly of the character of the present one has not been established by precedent, it is adjudged and ordered by the court this 17th day of April, 1899, that said executrix be, and she is hereby, allowed an appeal from the order of this court passed herein April 5, 1899, and that the same bond in the sum of ten thousand dollars, to act as a supersedeas upon the issuing a writ of error in this case, shall stand and act as a supersedeas upon said appeal, or according as a writ of error or appeal is ultimately decided to be the method of obtaining a review of the decision of this court in said cause."

The supersedeas bond was in the sum of $10,000, and ran to Arabella D. Sinnott, William A. Piles, Ida Piles Miller and Belle Hubert.

*Mr. William Henry Dennis* for plaintiff in error and appellant.

*Mr. William A. Milliken* and *Mr. F. P. B. Sands* for defendants in error and appellees.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The Court of Appeals allowed a writ of error to review its decree approving the final account, and, a few days subsequently, and at the same term, in view of the fact that the practice in cases of this precise character had not been established, also allowed an appeal, the supersedeas bond on the writ to stand on the appeal, if appeal were determined to be the correct method of procedure. The cause was docketed in this court as on writ of error, and as on appeal, and appellees or defendants in error move to dismiss the appeal because the writ of error had previously issued, and the writ of error because the remedy was by appeal. We must decline, however, to sustain both motions on these grounds under the circumstances. The determination of the proper course to be taken in seeking our jurisdiction will dispose of one motion or the other.

By section 8.of the act of February 9, 1893, 27 Stat. 434, c. 74, final judgments or decrees of the Court of Appeals are to be re-examined by this court on writ of error or appeal in the same manner and under the same regulations as theretofore provided in cases of writs of error or appeals from judgments in the Supreme Court of the District of Columbia.

In *Ormsby* v. *Webb,* 134 U. S. 47, it was ruled that a writ of error would lie to review a judgment of the Supreme Court of the District of Columbia, admitting a will to probate, not merely because in that case a trial by jury had been actually had, but upon the more general grounds, thus stated by Mr. Justice Harlan : " It is, of course, undisputed. that a final decree in equity, in the court below, cannot be reviewed here by means of a writ of error. But a proceeding involving the original probate of a last will and testament is not strictly a proceeding in equity, although rights arising out of, or dependent upon, such probate have often been determined by suits in equity. In determining the question of the competency of the deceased to make a will, the parties have an absolute right to a trial by jury, and to bills of exceptions covering all the rulings of the court during the progress of such trial. These are not the ordinary features of a suit in equity. A proceeding in this District for the probate of a will, although of a peculiar character, is nevertheless a case in which there may be adversary parties, and in which there may be a final judgment affecting rights of property. It comes within the very terms of the act of Congress defining the cases in the Supreme Court of this District, the final judgments in which may be reëxamined here. If it be not a case in equity, it is to be brought to this court upon writ of error, although the proceeding may not be technically one at law, as distinguished from equity." And see *Campbell* v. *Porter,* 162 U. S. 478.

But while that is the established rule in that class of cases, it by no means follows that it is applicable in this case.

At common law jurisdiction over the estates of deceased persons vested in the ecclesiastical, common law and chancery courts, and, in this country, courts of probate or orphans' courts have universally been created by statute for the general exer-

cise of that jurisdiction, including the exercise of equitable, as well as common-law powers, and the pursuit of appropriate procedure.

The District Supreme Court sits as an orphans' court, and by section 1 of subch. 15, of chap. 101 of the Maryland testamentary act of January 20, 1799, 2 Kilty, November Session, 1798, the orphans' court was instituted "for the purpose of taking the probate of wills, granting letters testamentary and of administration, directing the conduct and settling the accounts of executors and administrators, securing the rights of legatees, superintending the distribution of the estates of intestates, securing the rights of orphans and legatees, and administering justice in all matters relative to the affairs of deceased persons, according to law."

By other sections it is made the duty of the executor or the administrator, on settlement of his account, to deliver up the estate, or deliver up and distribute the surplus or residue.

And by section 12, of subch. 15, it is provided that : " The orphans' court shall have full power, authority and jurisdiction to examine, hear and decree upon, all accounts, claims and demands, existing between wards and their guardians, and between legatees, or persons entitled to any distributable part of an intestate's estate, and executors and administrators, and may enforce obedience to, and execution of, their decrees, in the same ample manner as the court of chancery may."

There can be no question that the District Supreme Court was clothed, as an orphans' court, with ample powers to proceed in the settlement of estates and the distribution thereof to those entitled, in accordance with equitable principles and procedure; and we think that the controversy raised by the exceptions of the next of kin to this final account was in its nature of equitable cognizance, and that the decree of the Court of Appeals is properly reviewable on appeal rather than on writ of error.

The reasoning which conducts to this conclusion in proceedings of this character in effect disposes of the contention of appellant that the decree should be reversed because the orphans' court had no jurisdiction over an alleged residue of per-

sonalty in the hands of an executrix undisposed of by the will, as jurisdiction over it belonged solely to a court of equity, as a matter of trust. Alvey, C. J., in the opinion reported 14 App. D. C. 1, 21, discussed the subject at length, and, among other things, said: "The executor, as is well understood, derives his title as executor from the will of the testator, but he takes no beneficial interest in the undisposed of surplus or residue of the personal estate, by mere implication or construction, as by the former English rule. It is true every executor is, in a certain sense and to a certain extent, a trustee for all persons interested in the preservation and distribution of the personal estate of the testator, and he is equally so in respect of the surplus or residue of the estate undisposed of by the will, as of any other portion of the estate. He takes the estate under the will for purposes of administration, and of distribution to those entitled; and while a court of equity has a long established jurisdiction in all matters of trust, of account, of administration, and of construction, in the settlement of estates, yet such jurisdiction is not exclusive of the very ample jurisdiction conferred on the orphans' courts of Maryland, and the special term of the Supreme Court of this District for orphans' court business, by the testamentary act of 1798, ch. 101. That act embodies in its various provisions a testamentary and administrative system, intended to be complete in itself." The Chief Justice then gave a *résumé* of the act, and quoted the sections to which we have already referred.

There being a controversy over the distribution between the next of kin and the executrix, we are entirely satisfied that the powers vested in the orphans' court gave it jurisdiction to dispose thereof, and that appellees were not compelled to go into the equity court.

Appellees also moved to dismiss both the writ of error and the appeal, on the ground that the judgment of the Court of Appeals on the first appeal was a complete and final decree, settling and fixing the rights of the parties, and that appellant, because she did not appeal therefrom, was concluded from any review by this court of the matters then considered.

We do not think so. On the appeal of the next of kin, the

Court of Appeals reversed and remanded the cause "that the account be restated in accordance with the principles of the opinion of this court."

The account was to be entirely recast under the mandate, and the determination of who were the next of kin, the proportions they should take, the effect of the death of one or more of them, and any other questions that might arise, were remitted to the court below. The settlement was to be a final settlement, and the decree reversing and remanding that such a settlement might be had on the principles indicated was not final so as to justify an appeal by the executrix therefrom, although, had it been a decree of affirmance, the present appellees might have appealed.

We come then to the case upon the merits, and it must be determined on the correct construction of the will, arrived at in accordance with well settled applicable rules.

The cardinal rule is that the intention of the testator expressed in his will, or clearly deducible therefrom, must prevail, if consistent with the rules of law. And another familiar rule is that the law prefers a construction which will prevent a partial intestacy to one that will permit it, if such a construction may be reasonably given. And in principle this must be so when it is contended that the executor takes merely for next of kin claiming as distributees of an alleged undisposed of residue.

The general intention of the testator in this instance is perfectly clear. The will was inartificially drawn, but its various provisions taken together put it beyond doubt that he intended to dispose of all of his property, and we think that he accomplished that purpose. In doing so all property not expressly given another destination was, in substance, devised and bequeathed to his wife, including some $10,000 on deposit. His intention that she should thus take is evident. And if by the will he disposed of all the property he had, there appeared no necessity for a technical residuary clause.

The property enumerated in the will was the property he owned at the time of his death, except that there was but $810.60 on deposit in bank, and he had $9000 in United States bonds more than when the will was executed. These bonds

were of a subsequent date to that of the execution of the will, and were necessarily, therefore, purchased afterwards.

The will, executed April 3, 1894, referred to $15,500 of bonds, and, at his death, he had bonds for $24,500, $15,500 dated April 23, 1889, and $9000 dated April 1, 1895.

The question then really comes to this, whether an irrebuttable presumption arises that the testator, by reducing the amount of money on hand at the date of his will, intended that the amount of such reduction though remaining in his assets in another form should be distributed to his next of kin rather than that his wife should receive it.

And it is to be observed at the outset that to each of the next of kin he made a bequest. To his sister, Mrs. Sinnott, a specific legacy of $12,000 of the $15,500 of bonds, and to the children of a deceased sister legacies aggregating $3000 out of the $3500 of bonds remaining after the delivery of the $12,000 to Mrs. Sinnott. Certain enumerated promissory notes were otherwise disposed of, and all the rest of his property, real estate, household furniture, Richmond city bond, money, etc., was devised and bequeathed to his beloved wife. There was indeed an apparent surplus of $500 of the $3500 of bonds, but the allowance to Mrs. Hemenway of $500 immediately followed the bequests to the next of kin.

At his death there were on hand $9000 more in bonds, and $9000 less in money. Do the rules of law require it to be held that by this change he intended to withdraw so much from what he had designed his wife to have, and to bestow it on the next of kin in addition to what he had originally expressly given them?

The question involved is one of ademption and not of satisfaction. Without going into refinements in respect of the definition of the word ademption, it may be said to be the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation or clearly indicative of an intention to revoke. The satisfaction of a general legacy depends on the intention of the testator as inferred from his acts, but the ademption of a specific legacy is effected by the extinction of the thing or fund bequeathed, and the intention that the leg-

acy should fail is presumed. At least a different intention in that regard which is not expressed will not be implied, although the intention which is expressed relates to something which has ceased to exist.

Williams says in reference to the different kinds of legacies that: " A legacy is general when it is so given as not to amount to a bequest of a particular thing or money of the testator, distinguished from all others of the same kind. A legacy is specific when it is a bequest of a specified part of the testator's personal estate, which is so distinguished. . . . A legacy of quantity is ordinarily a general legacy; but there are legacies of quantity *in the nature* of specific legacies, as of so much money, with reference to a particular fund for payment. This kind of legacy is called by the civilians *a demonstrative* legacy; and it is so far general, and differs so much in effect from one properly specific, that if the fund be called in or fail, the legatee will not be deprived of his legacy, but be permitted to receive it out of the general assets; yet the legacy is so far specific, that it will not be liable to abate with *general* legacies upon a deficiency of assets." Vol. 2, p. 1158. And he adds: "The courts in general are averse from construing legacies to be specific; and the intention of the testator, with reference to the thing bequeathed, must be clear."

These rules are considered and applied in well nigh innumerable cases. Many of them will be found cited in the notes to *Ashburner* v. *Macguire*, 2 White and Tudor's Leading Cases in Equity, Part II, Fourth American Edition from Fourth London Edition, p. 600.

In *Walton* v. *Walton*, 7 Johns. Ch. 258, Chancellor Kent reviews the subject at large with his usual ability, and criticises the observation of Lord Thurlow in *Stanley* v. *Potter*, 2 Cox, 180, that the question in these cases does not turn upon the intention of the testator, saying: " But I apprehend the words of Lord Thurlow are to be taken with considerable qualification; and that it is essentially a question of intention, when we are inquiring into the character of the legacy, upon the distinction taken in the civil law, between a demonstrative legacy, where

the testator gives a general legacy, but points out the fund to satisfy it, and where he bequeaths a specific debt."

In *Wilcox* v. *Wilcox*, 13 Allen, 256, Wells, J., said: "Courts do not incline to construe legacies to be specific, and will not do so unless such be the clear intention of the testator. *Kirby* v. *Potter*, 4 Ves. 748; *Attorney General* v. *Parkin*, Ambl. 566; *Briggs* v. *Hosford*, 22 Pick. 288; *Boardman* v. *Boardman*, 4 Allen, 179. If a legacy be given, with reference to a particular fund only, as pointing out a convenient mode of payment, it is to be construed as demonstrative and the legatee will not be disappointed though the fund wholly fail."

In *Tifft* v. *Porter*, 8 N. Y. 516, Johnson, J., speaking for the majority of the court, said: "A legacy is general, when it is so given as not to amount to a bequest of a particular thing or money of the testator distinguished from all others of the same kind. It is specific, when it is a bequest of a specified part of the testator's personal estate which is so distinguished. . . . The inclination of the courts to hold legacies to be general, rather than specific, and on which the rule is based that to make a legacy specific, its terms must clearly require such a construction, rests upon solid grounds. The presumption is stronger that a testator intends some benefit to a legatee, than that he intends a benefit only upon the collateral condition that he shall remain till death, owner of the property bequeathed. The motives which ordinarily determine men in selecting legatees, are their feelings of regard, and the presumption of course is that their feelings continue and they are looked upon as likely to continue. An intention of benefit being once expressed, to make its taking effect turn upon the contingency of the condition of the testator's property being unchanged, instead of upon the continuance of the same feelings which in the first instance prompted the selection of the legatee, requires, as it ought, clear language to convey that intention."

And so Alvey, C. J., in *Gelbach* v. *Shively*, 67 Md. 498: " Ordinarily, a legacy of a sum of money is a general legacy; but where a particular sum is given, with reference to a particular fund for payment, such legacy is denominated in the law a *demonstrative* legacy; and such legacy is so far general, and

differs so materially in effect from one properly specific, that
if the fund be called in or fail, or prove to be insufficient, the
legatee will not be deprived of his legacy, but he will be per-
mitted to receive it out of the general assets of the estate.
*Dugan* v. *Hollins*, 11 Md. 77. But such legacy is so far specific
that it will not be liable to abate with *general* legacies, upon
a deficiency of assets, except to the extent that it is to be
treated as a general legacy, after the application of the fund
designated for its payment. *Mullins* v. *Smith*, 1 Drew. & Sm.
204; 2 Wms. Exrs. 995. The authorities seem to be clear
in holding that whether a legacy is to be treated as a demon-
strative legacy, or is one dependent *exclusively* upon a particular
fund for payment, is a question of construction, to be deter-
mined according to what may appear to have been the general
intention of the testator. . . . . It is certainly true, as a gen-
eral proposition, as was said by the Vice Chancellor in *Dickin*
v. *Edwards*, 4 Hare, 276, that where a testator bequeaths a sum
of money in such a manner as to show a *separate and independ-
ent intention* that the money shall be paid to the legatee *at all
events*, that intention will not be held to be controlled merely
by a direction in the will that the money is to be raised in a
particular way, or out of a particular fund."

These references, and rulings of similar import are legion,
serve to illustrate the governing principles. The intention of
the testator must prevail, and legacies will not be held specific,
when the result would be that the mere transmutation of money
into securities raised an irrebuttable presumption of ademption
inconsistent with the intention of the testator as plainly deduci-
ble from all the terms of his will taken together.

As we have already stated, the general intention of the testa-
tor in this case was to leave all his property to his wife except
what was expressly otherwise disposed of, and among the clauses
inserted in effectuation of that result were these: "Also, my
business as a claim agent and as publisher of ' The Vedette,'
together with all books, papers, files, office furniture, etc., etc.
Also 200 shares of Sutro tunnel stock and Comstock bonds;
also, notes and evidences of indebtedness to me, of more or less
value; also, deposits of currency entered on my bank book of

the National Metropolitan Bank amounting to $10,000.00, more or less." If the latter item stood alone and were not read in connection with the will as a whole, it might well be that it should be held to be a specific legacy, adeemed *pro tanto* by the use of the money except $810.60 in the purchase of additional bonds, or otherwise. But taken in connection with all the provisions of the will; with the manifest general intention of the testator; and with the rules against partial intestacy, and against treating legacies as specific, if that construction can be avoided, we think that it should be regarded as in its nature a demonstrative legacy, and not adeemed by the change from money into property.

Assuming that the testator had at the date of the will about $10,000 on deposit in the bank, his intention was clear that his wife should receive the amount, and we are of opinion that we ought not to defeat that intention by holding that the pecuniary legacy was specific, and that the subsequent change was an ademption, and so a rule of law rather than a question of intention.

In *Towle* v. *Swasey*, 106 Mass. 100, a legacy of "whatever sum may be on deposit" in a certain savings bank was held to be specific, but there the provisions of the will evidenced no intention to the contrary, and the language used essentially differed from that in this case.

It results that Mrs. Kenaday was entitled to credit herself with the $9218.76, and that the original decree of the orphans' court was correct. But in view of the lapse of time and the course of the litigation, we shall simply reverse the decree of the Court of Appeals and remand the cause to that court with a direction to remand it to the court below for a restatement of the final account in accordance with the views we have expressed.

*So ordered.*

Mr. Justice Brewer and Mr. Justice Peckham dissented.