# TUOHY v. HANLON.

EXECUTORS; COSTS INCURRED IN DEFENDING WILL BEFORE PROBATE; ORPHANS' COURT.

1. The Supreme Court of this District, holding a special term for Or-
phans' Court business, has the power to allow an executor who has
acted in good faith, expenses incurred and paid by him in employ-
ing counsel to resist a *caveat* interposed before the will has been
admitted to probate, as well as afterwards.

2. While, in a common-law cause, the court cannot reform a judgment
and allow costs after the expiration of the term, in the probate
court, the fact that the term has expired at which a judgment was
rendered upon a verdict after the trial of issues concerning the valid-
ity of a will, refusing to admit the will to probate, will not preclude
the court from allowing the executor who has unsuccessfully de-
fended the will counsel fees and costs incurred by him, such expenses
not being costs necessarily taxable against the unsuccessful party,
but being elements of the accounting within the control of the court
during the whole period of administration.

No. 1038. Submitted April 3, 1901. Decided May 21, 1901.

HEARING on an appeal by an administrator from an order
of the Supreme Court of the District of Columbia holding a
special term for Orphans' Court business, allowing a former
executor counsel fees and costs incurred by him in unsuccess-
fully defending a will to which a *caveat* had been filed.
*Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from an order of the Supreme Court of
the District holding a special term for Orphans' Court busi-
ness in a case in which the facts appear to be as follows:

One Thomas Tuohy, late of the District of Columbia and
now deceased, being possessed of an estate of the value of

15

about $7,000, mostly, if not entirely, composed of personal property, executed in the year 1894, a paper-writing purporting to be his last will and testament, with a codicil thereto, whereby he bequeathed $5 to one of two sons, the present appellant, $500 to another son, and the residue of his estate to a widowed daughter and her two infant children, of whom one, at the time of the execution of the will, was of the age of about five years, and the other was of the age of about four years. The appellee, Anthony Hanlon, and another person were appointed by the testator as the executors of the will, which was placed by the testator in Hanlon's possession.

The testator died in 1898; and Hanlon, as was his duty under the law, delivered the will to the register of wills. The person, who had been named as co-executor with Hanlon, having removed from this District, renounced the executorship; and Hanlon filed a petition for the probate of the will and for the issue of letters testamentary to himself. Thereupon, before probate was had of the will, the two sons of the deceased filed a *caveat,* upon which issues were framed for trial by the court before a jury. These issues were two in number,—the first, whether at the time of the execution of the paper-writing the deceased, Thomas Tuohy, was of sound and disposing mind and capable of executing a valid deed or contract; the second, whether the execution of the alleged will was procured by the exercise of undue influence on the deceased. No question seems to have been made of the actual execution of the will in due form of law; and we understand such execution to have been admitted by the caveators.

For the trial of these issues the caveators were made plaintiffs, and the appellee, Anthony Hanlon, was made defendant. The mother of the two infant children was appointed their guardian *ad litem* for the purposes of the contest. They were, in fact, the substantial parties in interest; for their mother, it seems, would receive more of her father's estate by distribution under the theory of his intestacy than she would under the will, if it were sustained.

On both issues the jury returned a verdict in favor of the

caveators, notwithstanding that in the record before us the justice who presided at the trial certifies that there was substantially no testimony to sustain the charge of undue influence, and that the preponderance of the testimony was in favor of testamentary capacity on the part of the deceased. The justice, however, overruled a motion for a new trial made by the caveatee, for the reason, as he stated, and as he certifies in the record, that, while the preponderance of testimony was in favor of the testamentary capacity of the deceased, it was not so strongly so as to assure a different verdict from another jury. Thereupon, on February 9, 1900, an order was made by the court adjudging the alleged will to be invalid, refusing to admit it to probate, denying letters testamentary to the appellee, and directing the issue of letters of administration to the oldest son of the deceased, the appellant here, who forthwith qualified and entered upon the administration of the estate. The appellee Hanlon delivered to him the entire personal estate in his hands without diminution. And it is proper to add, that the presiding justice, in the record before us, certifies that "Hanlon had reasonable and probable grounds for maintaining said paper-writing and codicil as the valid last will and testament of the said deceased, and that he acted in good faith in endeavoring to maintain it as such, and that no undue influence was exercised by him upon the said Thomas Tuohy in order to procure the execution of said paper-writing and codicil."

On May 29, 1900, the appellee filed a petition for the allowance to him out of the estate of costs and expenses incurred by him in the premises; namely, $500 for counsel fees, $10 deposited with the register of wills in the first instance as security for the costs of probate and administration, $34.80 expended as costs for the procurement of witnesses — in all, the sum of $544.80; and also a balance of fees amounting to $47.76 charged against the appellee by the register of wills.

Upon this petition, after holding it under consideration for some time, the court, on November 14, 1900, entered an order in favor of the appellee for the allowance of costs and

expenses, as claimed, directing that the administrator should pay these costs and expenses, and adjudging that, when paid, he should have credit for them in his administration account.

From this order the administrator has prosecuted the present appeal.

*Mr. Arthur Peter* for the appellant.

*Mr. Hugh T. Taggart* and *Mr. Joseph J. Waters* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

There are two assignments of error,— the one general, to the effect that the court below was without authority to allow to the appellee the costs and expenses in question out of the estate of the deceased; and the second, a special assignment to the effect that, under the system of terms of court now prescribed to be had in the probate court branch as in other divisions of the Supreme Court of the District, it was not competent for the court to allow any costs after the lapse of the term at which the order was made which adjudged the will to be invalid. All the costs are involved in this latter assignment, but only the item of counsel fees in the first.

1. That the question of the propriety of the allowance of counsel fees to a person named as executor in a paper-writing purporting to be a will, is not to be determined by his success or failure in the maintenance of that paper-writing as a valid instrument, is settled by the authorities and does not appear to be contested by the appellant. The very same authorities upon which he relies admit and enforce the rule, that an executor, seeking unsuccessfully to maintain the validity of the will which he has propounded, after the issue of letters testamentary to him, is entitled to be allowed for counsel fees in his account, notwithstanding that in the contest the will has been overthrown and held for naught, if he has acted in good faith. *Compton* v. *Barnes,* 4 Gill, 55; *Townshend* v. *Brooke,* 9 Gill, 90; *Glass* v. *Ramsay,* 9 Gill, 456; *Dorsey* v.

*Dorsey,* 10 Md. 471; *Brown* v. *Johns,* 62 Md. 333. Such has been the ruling of the courts of the State from which we have derived our probate law, and specifically the statutory provisions under which such allowances have been claimed and authorized. And as this ruling is not contested, but on the contrary relied upon by the appellant in support of his contention, it may be accepted as settled law.

The subject-matter was regulated by two sections of the act of Maryland of 1798, Ch. 101, which is the basis of all our testamentary law, and which is substantially in force to this day in the District of Columbia. Subchapter 15, section 17, of that act provides that, upon the trial and determination of any issues, " the Orphans' Court may award costs to the party in their opinion entitled thereto; " and subchapter 10, section 2, provides that an executor or administrator may in his account have an " allowance for costs and for extraordinary expenses, not personal, which the court may think proper to allow, laid out in the recovery or security of any part of the estate."

Under one or other, or both of these sections, the Court of Appeals of Maryland has found the authority for the allowance of counsel fees in the cases cited in which they have been allowed, notwithstanding the contention there, as well as here, urged that the Orphans' Court, being a court of limited and special statutory jurisdiction, to use the express words of the statute itself, " shall not, under pretext of incidental power, or constructive authority, exercise any jurisdiction whatever, not expressly given by this act, or some other law,"—a contention which certainly has lost much of its force since the transfer of the powers of our Orphans' Court to the Supreme Court of the District of Columbia, and especially in view of the recent act of Congress of June 8, 1898, 30 Stat. 434, which seems to constitute the special term of that court exercising the jurisdiction of an Orphans' Court, a court of general jurisdiction. In any event, it is undoubtedly the law that the special term of the Supreme Court of the District exercising the functions of an Orphans' Court is entitled, within the scope of those functions, to proceed in accordance with

equitable principles and procedure. *Sinnott* v. *Kenaday,* 179 U. S. 606, 615. Especially in the matter of the awarding of costs is there equitable jurisdiction conferred on the Orphans' Court, and on the Supreme Court of the District of Columbia exercising the functions of an Orphans' Court, by the express terms of the sections of the statute which have been cited.

In the case of *Johns* v. *Hodges,* 60 Md. 215, it was said that " the awarding of costs in a trial of issues from the Orphans' Court is for that court exclusively: the court of law, in which the issues are tried, has no power to enter a judgment for costs on a verdict of a jury." In the case of *Browne* v. *Browne,* 22 Md. 103, it was held that the Orphans' Court is the only proper tribunal to determine the question of costs in the case of issues tried before a jury. And in the case of *Levy* v. *Levy,* 28 Md. 25, in construing a section of the Code of Maryland, which is substantially no more than a re-enactment of the 17th section of subchapter 15 of the act of 1798, already mentioned, the Court of Appeals of Maryland held, that by it the Orphans' Court was " vested with discretionary power to award costs and to enforce their payment." So, also, in the case of *Brown* v. *Johns,* 62 Md. 333, it was held that " the Orphans' Court, in a case of issues sent to a court of law for trial, has discretionary and exclusive power in the matter of awarding costs, and its judgment is final, and no appeal lies therefrom."

But the contention here is that counsel fees are not costs in the legal sense of the term *" costs,"* and therefore cannot be allowed at all to either party in any event or in any case under subchapter 15, section 17, of the act of 1798; and that, if allowed as " extraordinary expenses," under subchapter 10, section 2, of that act, it can only be to an executor, defending a will after the issue of letters testamentary to him; and not to a person named as executor to whom letters testamentary have not been granted. And it is argued in support of the contention that an executor, equally with an administrator, derives his powers, not from the will of the deceased whereby he has been appointed, but from the

court which issues his letters testamentary to him whereby he is authorized to act.

We cannot subscribe to the theory that in this District, whatever the doctrine may be elsewhere, an executor derives his authority from the probate court, and not from the will of the deceased person.   On the contrary, we have distinctly held, in accordance with precedent, and with that which we may regard as the common law of England on the subject, that an executor, differing radically in this regard from an administrator, derives his authority from the will, and not from the court wherein he becomes qualified to act.   *Sinnott* v. *Kenaday,* 14 App. D. C. 1; 2 Blackstone's Commentaries, 507.   And that ruling has been affirmed by the Supreme Court of the United States on appeal.   *Kenaday* v. *Sinnott,* 179 U. S. 615.   So, it must be regarded as settled law with us that an executor, although held as a trustee for all the purposes of the law and required to administer that trust under the direction and authority of the tribunal specifically provided for the purpose, derives his interest in the estate of the deceased entirely from the will, and becomes vested with that interest from the moment of the testator's death.   He may do many things which an administrator is not entitled to do; as, for example, to bury the deceased in a manner suitable to the estate which has been left.   In fact, the great commentator on English law, at the place above cited, 2 Com. 507, says that he can do most of the things before the probate of the will which he may do afterwards.   Indeed, in the present case it appears that he had actually reduced the personal estate of the deceased into his own possession; for in the record it is stated that, after the overthrow of the will and the appointment of the appellant as administrator, he delivered to this latter " the entire personal estate of the deceased then in his hands, without diminution."   He seems, therefore, to have already entered upon the performance of the duties of an executor.

Of course, a person named in a will as executor is under no obligation to accept the trust reposed in him by the testator. He may renounce the executorship, and thereby relieve him-

self from all duty and from all liability connected with it. But, as in the case of every other trust, if he accepts it, he must proceed with the execution of it, and he cannot be relieved from so doing, except by the order or decree of a court of competent jurisdiction. The executor named in the present case accepted in good faith the trust confided to him by his testator, when he filed his petition for the probate of the will and the issue to him of letters testamentary. He had no reason to suppose that the will was not a good and valid will; and he was within the line of his duty, as he certainly was within the line of his right, to proceed with the application. Possibly after the filing of that petition, and after the coming in of the *caveat,* he might even then have withdrawn,— although there is very grave doubt whether he could at that time have done so without the permission of the court. For his acceptance of the trust does not date from the issue of letters testamentary to him, if they are issued, but from the time of filing his petition. The petition is the solemn declaration of his acceptance; and it may be questioned whether he can, of his own accord, and without the permission of the court, turn back after he has filed his petition. Nor is it apparent how any good purpose could be subserved, if he then turned back. The will is then in court; it has been propounded for probate; it must be disposed of in some way before any letters of administration are granted to anyone. The withdrawal of the executor named could only result in the appointment of some one else to conduct the contest. In the present case, where infant children, and they alone, are the real parties interested in sustaining the will, it would be a disgrace to our jurisprudence if their rights could be overthrown by the withdrawal of an executor from an impending contest. As was said in the case of *Compton* v. *Barnes,* 4 Gill, 55, already cited, it appears to us that " under such circumstances it was the plain and imperative duty of the executor to appear to the *caveat,* for the purpose of resisting it and vindicating the will."

In the case of *Townshend* v. *Brooke,* 9 Gill, 90, which certainly seems to sustain the appellant's contention, and in

which it was held that " the Orphans' Court has no authority
to direct a collector *pendente lite* to pay a sum of money to
persons named as executors in a will, to be appropriated as
fees to counsel employed to resist a *caveat* interposed before
a will was admitted to probate," there were circumstances
which must be held to differentiate it from the case now
before us. Under the practice as it obtained in Maryland
at and before the time at which that case was decided, and
under the former practice in this District, when proceed-
ings for the probate of wills and the issue of letters testa-
mentary thereon were all *ex parte* and of the most informal
character, the acceptance of his trust by the executor and
the issue of letters testamentary to him were simultaneous.
The issue of the letters was the first evidence of the accept-
ance of the trust. But it was the acceptance of the trust and
not the mere issue of the letters that imposed upon the exec-
utor the duty of defending the trust. At that time, too, it
might well be, and it often was the fact, that parties in in-
terest had no notice of the existence of a will until after the
issue of letters testamentary. In the present practice, how-
ever, of the Supreme Court of this District holding a special
term for Orphans' Court business, the situation is very greatly
changed. By the rules of that court it is prescribed that an
executor, desiring to propound a will for probate and to pro-
cure letters testamentary thereon, must file a petition to that
effect under oath, give the names and places of residence and
the relationship of those interested, and serve notice upon
them of his purpose. And the recent act of Congress of June
8, 1898 (30 Stat. 434), adopts and enlarges this practice.
By the provisions of this practice and of the act of Congress
cited, it is a matter of necessity that, in the great majority
of cases, *caveats* must be filed and issues must be formulated
and tried before the probate of a will and not afterwards.
And it necessarily follows, too, that, for the purpose of the
determination of the validity of a will, the acceptance of his
trust by the executor and his duty to maintain the will must
be held to date from the time of the filing of the petition.

This being so, the decision in the case of *Townshend* v.

*Brooke,* is no longer pertinent, even if its authority was not to some extent shaken by the subsequent case of *Brown* v. *Johns,* also heretofore cited; and the principle of the decision in the case of *Compton* v. *Barnes, supra,* becomes applicable. The allowance of counsel fees in the present case is, as in the case of *Brown* v. *Johns,* to an executor who has entered upon the performance of his trust and who has in good faith defended that trust against the attack upon it.

If it be urged, as indeed it has been urged, and as was urged in the case of *Brown* v. *Johns,* and in the English case there referred to of *Charter* v. *Charter,* L. R. 7 H. L. 364, and same case, 24 W. R. 874, the allowances of charges like this might endanger the rights of next of kin or heirs-at-law, it must be remembered that the matter of costs and expenses is in the discretion of the probate court, and that the trust reposed in that court by the law is not likely to be abused. What the next of kin are entitled to in the distribution of an estate is not the whole estate left by the deceased, but that estate as shown to exist after the allowance of the reasonable costs of administration. It is not so much the case of money claimed by one person to be payable to him by another and denied by that other to be due, as the case of a fund in court to be taken care of and to be administered for the benefit of the person or persons, not in the first instance absolutely known, but who may ultimately be found to be entitled. The reasonable cost of such administration, and only such cost as is reasonable, is to be allowed out of the fund.

We think that the court below in this case acted within the authority conferred upon it by law; and that, as it so acted, the amount of the allowance was discretionary with it. And we do not understand that there is any claim that the allowance was excessive, or that there was any abuse of the discretion reposed in the court by law.

2. But it is contended, in the second place, that, even if the court below did have the general authority in this case to allow counsel fees and costs, it was without authority to do so after the lapse of the term at which the order was made which confirmed the verdict of the jury upon the issues. This

contention is based upon the provisions of the act of Congress of June 8, 1898, already referred to and the rules made by the court below in pursuance of that act.

The act of Congress of June 8, 1898, as is well known, was intended to remedy certain anomalies or deficiencies in previous legislation resulting in great measure from the abolition of the old Orphans' Court and the transfer of its jurisdiction to the Supreme Court of the District. Under previously existing law, the Supreme Court of the District, exercising the functions of an Orphans' Court, could not take the probate of wills of real estate, and had no jurisdiction, or only an exceedingly limited jurisdiction over real estate of a deceased person; and the issues, which it was authorized to formulate and to transmit for trial to the common-law branch of the court, could only affect personal property. The decision of those issues was in no manner binding upon the heirs-at-law, as distinguished from the next of kin, even when the heirs-at-law were in fact the same persons as the next of kin. Nor was there any means provided for the determination of the validity of wills of real estate in advance of an attack made upon them by those claiming adversely through an action of ejectment. Moreover, the transmission of issues for trial to the common-law branch of the court, which was eminently right and proper, when the Orphans' Court existed as formerly constituted, was felt to be a useless circuity when those issues could just as well be tried in the branch of the court which formulated them, and a jury could equally well be summoned into that court. The purpose of the act of 1898 was to remove these anomalies and deficiencies, to give to the probate court authority to take the probate of wills of realty as well as of personalty, to administer the realty as well as the personalty so far as might be necessary for the payment of debts and legacies, to provide for the formulation of issues to involve the realty as well as the personalty and for the trial of those issues before a jury summoned in the probate court itself, and to give to the judgment, order, or decree of the court rendered upon the verdict of the jury the conclusiveness and binding effect of finality.

The provision of the act in this last regard is in the following terms:

" In all cases in which such issues shall be tried the verdict of the jury and the judgment of the court thereon shall, subject to proceeding in error and to such review as the common law provides, be *res judicata* as to all persons, nor shall the validity of any such judgment be impeached or examined collaterally."

The act further provided that the Supreme Court of the District in general term might make rules of practice necessary for the exercise of the jurisdiction thus conferred. And that court accordingly made rules, of which two are cited as applicable to the present controversy. Rule 1 of these is in the following terms:

" The terms of this court holding a special term for orphans' court business shall be held as follows: First Monday of January, first Monday of April, first Monday of October."

And the second, which is designated as Rule 12, prescribes that —

" All proceedings (in the orphans' court branch) relating to the determination of issues of fact shall conform as nearly as practicable to proceedings in the special term holding a circuit court for the trial of issues of fact therein, and all rules of this court applicable to such proceedings in the circuit court shall apply, unless contrary to the law governing this branch of the court and these rules."

The trial of the issues formulated in the present case and the verdict of the jury thereon were had at the October term of 1899; but the cause was carried over to the January term of 1900 by the interposition of a motion for a new trial, which was not disposed of until January of the last-mentioned year. The order entered by the court upon the verdict of the jury, the purport of which has already been stated, was made on February 9, 1900, during the pendency of the January term. That order is wholly silent as to costs and expenses. The question of the allowance of costs and

counsel fees, so far as the record shows, was first raised by a petition for such allowance presented to the court on or about June 1, 1900, while the April term was pending; and the order for the allowance, which has given occasion for the present appeal, was made on November 14, 1900, when the October term had commenced and was pending. The contention of the appellant is, that this question of costs should have been raised and disposed of by the order of February 9, 1900; that the omission of costs and allowances from that order was the equivalent of a refusal to allow them to either party; and, therefore, that the matter was *res judicata* after the lapse of the term at which that order was entered.

To the correctness of this contention we cannot accede. We must assume that the rules adopted by the Supreme Court of the District to give effect to the act of Congress were not intended to contravene or nullify any previously existing law. Indeed, the second rule cited expressly provides that they shall not apply in any case contrary to existing law. Now, in view of the provisions of that law, it would scarcely be competent for the court to break up into terms the year of administration allowed for the settlement of estates, or to require that accounting should be had or claims presented and adjudicated with reference to any such terms. Undoubtedly, these terms were prescribed merely for the purpose of giving due effect to that clause of the act of 1898 which provides that judgments pronounced by the probate court upon the verdicts of juries rendered upon issues involving the validity of wills, should have the same finality as judgments at common law. And we know that at common law the device of terms, apart from their convenience in the dispatch of business, is mainly intended to determine the time from which the element of finality shall absolutely inhere in judgments there rendered.

At common law costs are a necessary incident of judgment; they must be allowed at the time of rendition of judgment, or within the term during which that judgment remains under the control of the court, if they are allowed at all. After the lapse of the term, the judgment itself

passes from the control of the court; and necessarily, if the matter of costs has been overlooked or neglected, it is not competent for the court to reform the judgment or to allow costs.  But in the probate court the allowance of costs or of costs and expenses, is not, and never has been, an incident of the order of the court made upon the verdict of the jury after the trial of issues concerning the validity of the will. We are not advised of any practice, and there is no requirement of law, that demands the settlement of costs at the time the order is made upon the verdict.  There would be plausibility in the appellant's contention, if the costs to be allowed or charged were assessable individually for or against the parties to the issues; for it may be assumed that they finally go out of court with the rendition of the judgment or order and the lapse of the term wherein it has been rendered.  But the costs and expenses chargeable in the probate court and allowable under the act of 1798 are costs of administration, payable, if at all, out of the estate in court. They enter into the accounting, and do not necessarily in all cases concern the parties to the issues.  And inasmuch as they are elements of the accounting and concern the administration of the estate, their allowance or disallowance is not limited by terms prescribed for an entirely different purpose, but is within the control of the court during the whole period of administration.

From the record before us, it appears that the appellee, as executor named in the will of the deceased, not only accepted the trust by filing his petition for the probate of the will and the issue of letters testamentary to him, but also had actually entered upon the performance of the trust and had taken the estate into his possession; for it is certified that, upon the determination of the invalidity of the will, he forthwith delivered the whole estate in his hands, without diminution, to the appellant as administrator.  Whether he filed any account at that time does not appear; and we may assume that he did not.  But an accounting at that time would have been proper, and his costs and expenses reasonably incurred in the administration to that time could then

have been adjudicated. He adopted the course, which was probably better and more orderly, of turning over the entire estate to the administrator and then presenting his claim for the allowance of his costs and expenses. It does not appear to us that he was precluded from doing this, or that the court had lost jurisdiction of the subject-matter, by the fact that terms of court had been provided for the determination of issues on the validity of wills.

It is our conclusion that the court below was warranted by law in making the order appealed from, and that the order should be *affirmed, with costs. And it is so ordered.*