First National Bank of Birmingham, Guardian of Leta Duffy Shropshire, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

First National Bank of Birmingham, Guardian of Courtney W. Shropshire, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 60667, 60668. Promulgated December 5, 1934.

*Crampton Harris, Esq.*, for the petitioners.
*John D. Kiley, Esq.*, for the respondent.

OPINION.

Sternhagen: Respondent determined deficiencies of $4,312.50 and $4,316.04 in income taxes for 1929, by basing the profit on sales of stocks acquired by bequest, upon the values of the stocks at the date of the testator's death. Petitioners contend that the basis is the fair market value at the date of actual distribution. The facts are stipulated.

Leta Duffy Shropshire, mother of the two minor petitioners, died testate, March 18, 1920. At that time she owned, among other property, 30 common shares of the Ohio River Sand Co. These shares passed by clause third or fifth, bequeathing all corporate stocks, bonds, cash, and other personal property not otherwise disposed of to decedent's husband and their surviving children equally. In the will the testator directed that these shares should not be disposed of to anyone but her sisters or brothers or until after their refusal, the intention being expressed to keep them in decedent's family.

The will was admitted to probate April 13, 1920, and executors were appointed. In June 1921, or thereabouts, the executors rendered an account showing no outstanding claims against the estate, and this account was approved by the probate court. Up to this time the shares were worth $1,000 each. Thereafter the corporation, by stock dividend and otherwise, readjusted its capital structure, but these need not be set forth because the parties are not in controversy as to how they shall be taken into account.

The estate remained open until February 1, 1929, when by final decree it was settled and the executors discharged. On that date the fair market value of the common was $450 a share. Thereupon, on May 11, 1929, delivery was made to each petitioner of the 100 shares of common to which he was entitled. On that date each common share was converted into 2½ first preferred, 4 second preferred, and 10 common. On July 13, 1929, each sold all but 300 common for $44,500.

The Commissioner takes the value in 1920 or 1921 as the basis for gain or loss, and the deficiency which would result from that computation is stipulated. The petitioners contend that the proper basis is the value on February 1, 1929, and upon that hypothesis the resulting deficiency is also stipulated.

Respondent at first regarded the shares as acquired by petitioners by specific bequest, thus by section 113 (a) (5), Revenue Act of 1928, necessitating a basis of the fair market value at the time of death. But this contention is no longer argued and can not be sustained. The shares were acquired by a general legacy. *Kenaday* v. *Sinnott*, 179 U. S. 606; *Willis* v. *Barrow*, 218 Ala. 549; 119 So. 678. As to this, section 113 (a) (5) provides that " the basis shall be the fair market value of the property at the time of the distribution to the taxpayer."

That there was no actual distribution of the estate until 1929 is clear, and the petitioners' position is literally within the statute. But respondent urges that there may be distribution without manual delivery and that such distribution must be taken to have occurred in 1921, when it was apparent that debts would not impair the receipt by the legatees of these shares. He cites Alabama law to the effect that actual distribution might have been ordered at the end of a year if applied for or insisted upon. But such an order would only be founded on more evidence than we have in this record. We could not say that there was an undue or capricious delay in actual distribution. If we are to make any assumptions, it is more reasonable to suppose that the estate was closed as soon as possible than that it was unnecessarily held open. Where the inferences are evenly balanced, regularity and efficiency should be inferred rather than unwarranted delay. If there were evidence of capricious delay, there would be justification for entertaining the idea of constructive distribution, but such evidence must be more than the executor's tentative report of no claims against the estate. Cf. *J. H. Anderson*, 30 B. T. A. 1274; *Lillie V. Kohn*, 16 B. T. A. 662; *Garrett J. Donnelly, Executor*, 31 B. T. A. 577.

It should be noted that the change in the language of the Revenue Act of 1928 impairs the value of precedents such as *Brewster* v. *Gage*, 280 U. S. 327, and *Lillie V. Kohn, supra*. See also Report of Senate

Finance Committee on Revenue Bill of 1928 (70th Cong., 1st sess., Sen. Rept. 960, p. 26) indicating that certainty and uniformity were important purposes of the statutory change.

> *Judgment will be entered in accordance with the stipulation upon the basis of the value in 1929.*