## No. 14,884.

ESTATE OF DIETEMANN.
DIETEMANN *v.* DIETEMANN ET AL.
(119 P. [2d] 611)

Decided November 17, 1941.

Mr. GRANT E. McGEE, Mr. CHARLES A. MURDOCK, for plaintiff in error.

Messrs. SILVERSTEIN & SILVERSTEIN, for defendants in error Marie Dietemann, et al., residuary legatees.

*In Department.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

IN this proceeding plaintiff in error sought a construction of paragraphs VI, VII and VIII, contained in the will of Marie Lumena Dietemann, deceased. Such portions thereof as are necessary to our consideration are as follows:

"VI. I direct my Executor, hereinafter named, to sell, as soon as can be done without sacrifice, and my Executor shall be the sole judge as to what would be a sale without sacrifice, my land in Elbert County, Colorado, and to pay from the proceeds of the sale of said property the following bequests:

"To the Sacred Heart Church of the City and County of Denver, State of Colorado, the sum of two thousand dollars ($2,000.00) for masses to be said annually for the repose of my soul.

"To the St. Vincent Orphanage of the City and County of Denver, State of Colorado, the sum of two thousand dollars ($2,000.00);

"To the St. Clara Orphanage of the City and County of Denver, State of Colorado, the sum of two thousand dollars ($2,000.00);

"To the Queen of Heaven Orphanage of the City and County of Denver, State of Colorado, the sum of two thousand dollars ($2,000.00);

"Should the proceeds of the sale of said property be insufficient to pay all of the four (4) foregoing bequests, then I direct my Trustee to make up any deficiency from the income from the Trust hereinafter created in Paragraph VII, said deficiency to be paid from said income as and when received.

"VII. I give and devise to The Colorado National Bank of Denver all my real property situate in Clear Creek County, State of Colorado, and in the City and County of Denver, State of Colorado, in trust, nevertheless, for the following uses and purposes, to-wit:

"To manage and control the same and collect the income therefrom, with the power to sell and convey any part or all of said property, and give the necessary deeds or other instruments of conveyance therefor, and invest and reinvest the proceeds and keep the same invested in good interest bearing securities producing the highest income consistent with safety, and to hold the principal and income for the following purposes, to-wit:

"Subject to the provisions in paragraph VI, to pay the net income from said Trust Estate to my brother, Achille Dietemann, during his life; thereafter to pay the net income from said Trust Estate to his widow, Anna Dietemann, during her life. After the demise of my brother, Achille Dietemann, and his wife, Anna Dietemann, I direct my Trustee, subject to the provision in paragraph VI, to pay the net income from my Trust Estate to my niece, Elsie Muntwyler, my niece, Adeline Dietemann, and my nephew, Charles Dietemann, share and share alike, for a period of five (5) years after the demise of both my brother, Achille Dietemann, and his wife, Anna Dietemann. At the termination of five (5) years after the death of my brother, Achille Dietemann, and his wife, Anna Dietemann, this trust shall terminate, * * *.

"VIII. All the rest, residue and remainder of my estate wheresoever situate and of whatsoever nature, real, personal or mixed, I give, devise and bequeath to my nieces, Marie Dietemann and Bertha Dietemann, daughters of my brother Aloyse Dietemann, of Traubach-le-bas, Canton Dannemarie, Alsace, France, and to my nieces, Marie Dueringer, Cecille Dueringer, and my nephew, Joseph Dueringer, children of my sister, M. Adeline Dueringer, of the same address, share and share alike. * * * ."

The will was executed November 18, 1926, and was admitted to probate in the county court of the City and County of Denver May 15, 1939.

Achille Dietemann, brother of the deceased, a beneficiary under the trust created under the directions contained in paragraph VII, died in 1936. Plaintiff in error, wife of Achille Dietemann, is the life beneficiary of the trust created by the same paragraph. The Elbert county land mentioned in paragraph VI has been sold by the executor for the sum of $2,000; the personal estate which, for the most part, consists of cash and government bonds, amounts to approximately $15,000; claims and expenses of administration are estimated to be approximately $4,600, after the payment of which there is remaining a personal estate of approximately $10,400. The real estate, which is designated as the trust estate in paragraph VII, has an estimated value of $19,000, the annual net income therefrom being approximately $1,500.

By her petition for construction of the will plaintiff in error sought a decree adjudging that the Denver and Clear Creek county real estate mentioned in paragraph VII be considered as security only for the payment of the bequests to the religious organizations mentioned in paragraph VI, and that the personal estate not specifically bequeathed first be applied to payment of the remainder of the bequests set out in paragraph VI. Counsel for the residuary legatees, defendants in error, say that the court should have decreed that the legacies set out in paragraph VIII, which concerns the residual estate, are subordinate to the legacies mentioned in paragraph VI only in the event that there are not sufficient funds derived from the sale of the Elbert county lands and income from the trust set up by paragraph VII accruing during the life of plaintiff in error and for five years thereafter, to pay said legacies.

The four religious organizations named in paragraph VI entered their appearance in the trial court and asked

that the prayer of the petition for a construction of the will filed by plaintiff in error be granted. They make no appearance here. The executor filed its response, asking for "judgment and direction of the court in regard to the true construction of said will and of the rights of the beneficiaries * * * ." The county court found that the property described in paragraph VIII— the residual estate—could not in any event be used for the payment of the legacies set out in paragraph VI, and it entered an order denying the petition of plaintiff in error. This judgment and order was affirmed by the district court.

Counsel for plaintiff in error contend for a construction that would at once permit the payment of the legacies to the four religious organizations out of the personal property in the residual estate. Such a construction would permit her to immediately enjoy the net income as provided in paragraph VII. It is asserted that the income from the land described in paragraph VII should be considered as security only for payment of the legacies to the four religious organizations, in the event that the personalty was insufficient for their payment. In support of this theory counsel for plaintiff in error quote a portion of section 1286, page 2139, volume 2, Page on Wills, as follows: "The fact that legacies are charged upon realty shows that testator intends that the proceeds of the realty shall go to the legatees, in preference to devisees or heirs, if it is necessary to do so in order to have such legacies paid; but it does not, of itself, show that testator intends that the proceeds of such realty shall be taken before his personalty. In the absence of other provisions of the will, which show that testator intends to exonerate the personalty from liability for legacies, either absolutely, or until after the proceeds of the realty have been applied to this purpose, the proceeds of the personalty must be applied before the proceeds of the realty upon which the legacies are

charged. The land is merely given in aid of the personalty."

It will be noted that under this quoted statement, in the absence of other provisions of the will which show that the testatrix intended to exonerate the personalty from liability for legacies, the contention advanced here has no application where the payment of the deficiencies is not to be made from proceeds of the sale of the real estate, but from income derived from real estate, which is personal property; moreover, it is stated in said section (p. 2140): "The will, read in connection with the surrounding circumstances, may show that testator intended that the proceeds of the realty should be applied to the payment of the legacies before the personalty was thus applied." This is the position for which counsel for defendants in error contend. They point out that if the bequests to the four religious organizations were general, the arguments of counsel for plaintiff in error would have some weight, but, they say, the will clearly discloses the intention of testatrix to create a demonstrative legacy. In *Nusly v. Curtis,* 36 Colo. 464 (85 Pac. 846), we defined a demonstrative legacy as follows: "A demonstrative legacy partakes of the nature of both a general and specific legacy. It is a gift of money or other property charged on a particular fund in such a way as not to amount to a gift of the corpus of the fund, or to evince an intent to relieve the general estate from liability in case the fund fails."

To show that a general legacy was not intended by the testatrix, but that the money bequeathed to the religious organizations should come from a definite and specific fund, counsel for defendants in error stress the following language found in paragraph VI of the will: "I direct my executor, hereinafter named, to sell, as soon as can be done without sacrifice, and my executor shall be the sole judge as to what would be a sale without sacrifice, my land in Elbert County, Colorado, and to pay from the proceeds of the sale of said property the

following bequests:" Contemplating the contingency that sufficient money might not be derived from the sale of the Elbert county land, the testatrix directed her trustee, named in paragraph VII, to make up any deficiency in the amount necessary for the payment of the bequests to the religious organizations from the income to be derived from the trust estate created in said paragraph—"said deficiency to be paid from said income as and when received." Moreover, in creating the trust estate by paragraph VII testatrix specifically directed that the trustee is "to hold the principal and income for the following purposes, to-wit: Subject to the provision in paragraph VI, to pay the net income" to the persons and in the manner as set forth in said paragraph. It seems to us apparent from the language used that the bequests to the religious organizations were to be paid out of a specific fund or funds, and that they were not, as contended by counsel for plaintiff in error, to constitute simply a charge upon the real estate. The bequests to the religious bodies, it seems to us, fall within the scope of demonstrative legacies. "The courts prefer to construe a gift as demonstrative, in preference to specific, if such intention can be fairly deduced from the language of the will." Page on Wills (Lifetime Ed.), vol. 4, p. 130, §1399. See, also, *Nusly v. Curtis, supra.* In the present case the testatrix first provided for the creation of a fund from the proceeds of the sale of the Elbert county real estate from which these bequests were to be paid. This fund, as we perceive from the evidence, was sufficient to pay only one-fourth of these legacies, leaving a balance of $6,000. The testatrix anticipating that the proceeds from such sale might not be sufficient, provided another fund from which to pay any deficiency, by directing, in paragraph VI, that the trustee of the trust created in paragraph VII "make up any deficiency from the income of the trust * * * said deficiency to be paid from said income as and when received." The provisions in question, read in the light

of the surrounding circumstances, indicate to us that the testatrix intended that these bequests should be paid from her general assets if the specified funds prove insufficient. If she had intended the deficiency to be made up from the residual estate, without recourse to the income from the trust estate, as contended by counsel for plaintiff in error, it would have been unnecessary for her to say anything about where deficiencies in payment of the religious institution bequests should come from. A demonstrative legacy names a particular fund or other property from which it is to be satisfied, and demonstrates a convenient mode of payment; if that mode fails, the legacy is to be satisfied out of the general assets of the estate. *Thomas v. King,* 182 Ga. 463, 467, 185 S.E. 820, 823; *Lansburgh v. Lansburgh,* 37 F. (2d) 997; *Kenaday v. Sinnott,* 179 U.S. 606, 21 Sup. Ct. 233, 45 L. Ed. 339. In the instant case, the income from the trust to be established in accordance with the provisions of paragraph VII, which accrues during the lifetime of plaintiff in error and for five years thereafter, must first be used to pay any deficiency resulting from the insufficiency of proceeds derived from the sale of the land in Elbert county, before any recourse can be had to the residual estate. In reaching the conclusion that the bequests to the religious organizations named in paragraph VI are demonstrative legacies, we are somewhat persuaded by the position taken by the residuary legatees, who, notwithstanding a contrary self interest, contend that this construction, rather than that they are specific legacies, should prevail. We must admit, however, that the latter interpretation might possibly be warranted in view of the language used in the will. Since we hold that the legacies in question are demonstrative, the payment of the same is assured, otherwise they may partially abate. No error was committed by the trial courts in denying the petition of plaintiff in error.

The judgment is affirmed.

MR. JUSTICE YOUNG, MR. JUSTICE BAKKE and MR. JUSTICE HILLIARD concur.