ROBERT LEO SELBY *v.* THE FIDELITY TRUST COMPANY, ET. AL.

[No. 66, October Term, 1946.]

194

[REDACTED]

*Decided March 20, 1947.*

[REDACTED]

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*John L. Clark* and *Francis Neal Parke* for the appellant.

*Samuel K. Dennis* for the appellee, Fidelity Trust Company.

*J. Cookman Boyd* for the guardian, *et al.,* appellee.

GRASON, J., delivered the opinion of the Court.

This case was instituted in the Circuit Court for Howard County, in Equity, by the appellant, in his own right and as executor under the will of Harry V. Selby, deceased. His purpose was to have declared an addition in money and securities, made by and in the lifetime of Harry V. Selby, to a deed of trust executed by him to the Fidelity Trust Company, a body corporate, trustee,

subsequent to the date of his will, to be adeemed by a bequest made in that instrument. The chancellor refused the relief prayed, and dismissed the bill of complaint, and the case comes here on appeal.

The testator and grantor in the deed of trust was survived by the following: Two sons, Robert Leo and Edward I. Selby, and four grandchildren, the children of his son Edward I. Selby, namely, Alice Marion, Helen Elizabeth, Genevieve E., and Lawrence Edward. These children ranged in age from ten years to about twenty months at the time of Mr. Selby's death. The deed of trust was executed on November 24, 1936. By the terms of the deed Mr. Selby was, from time to time, to set over and deliver such securities and sums of money as he desired. He reserved a life estate in the corpus to be created, and upon his death the net income was to be paid to his son, Edward I. Selby, for life, if he survived his father. Upon the death of the survivor, the corpus was to be divided into two equal parts, the net income from one of the one-half parts to be held for the use of Alice Marion Selby, if then living, and when she attains the age of twenty-five years, one-half of the one-half part is to be delivered to her, free of the trust. The other one-half is to be held under a like trust as to the income until she reaches the age of thirty years, when it is to be delivered to her, free of said trust. If she dies before attaining the age of twenty-five or thirty years, her share in the trust is to go to her issue and descendants, *per stirpes,* free of the trust. If she shall die without issue, then to Helen Elizabeth Selby, her sister. The other one-half of the corpus is to be held for Helen Elizabeth Selby, upon the same trust, and if she dies before attaining the age of twenty-five or thirty years, without issue, her share is to go to Alice Marion Selby, to be held under said trust. Should both of these sisters die without descendants before final distribution, the whole of said trust property is to be delivered to Robert Leo Selby, or to his issue, if he is then dead. The said corpus, and the interest thereon, to be paid into the hands of the

beneficiaries named, and not into the hands of anyone else, whether claiming by, from, or under them, or otherwise. This deed also provides:

"At the death of the Grantor's said son, surviving him, the Trustee, may, in its sole discretion, use such portions of principal and/or income as may be necessary to defray the expenses of his last illness and burial, if these be not otherwise provided for."

On November 25, 1942, Mr. Selby executed his will. He bequeathed to the Fidelity Trust Company his farm and personal property thereon, in trust, to pay the net income therefrom to his son, Edward I. Selby, for his life, and from his death to pay said income, in equal shares, to Alice Marion Selby, Helen Elizabeth Selby, and Genevieve E. Selby, daughters of Edward I. Selby, until the youngest of them shall attain the age of twenty-five years, with cross limitations in the event of the death of any of them before the youngest shall attain said age without issue, and in the event of issue, the share of any or all so dying should go to their respective issue, *per stirpes* and not *per capita*. When the youngest attains twenty-five years, or upon the death of Edward I. Selby, whichever event shall last occur, then to divide said trust property among the sisters equally, and if any or all of them die before the happening of said event, leaving issue, their share to go to their respective issue *per stirpes* and not *per capita*. In the event all three should die, without issue, before the happening of said event, to pay over and transfer the whole of said trust estate to Robert Leo Selby. All payments under the trust to be paid to the party in interest and not into the hands of another. In the fifth item of the will the testator provided, if he should sell his farm before his death, then he bequeathed $20,000 to said Trust Company, to be held upon the same trust. The residue of his estate he left to his son Robert Leo Selby, whom he named executor.

Mr. Selby died on August 17, 1944. He sold his farm on April 15, 1943. In July, 1944, he transferred to the Trust Company securities valued at $15,482.88, and on

August 9, 1944, he delivered to the Trust Company cash in the amount of $5,000. These two items amount to $20,482.88 and the value of the trust estate at the time of his death was $41,467.18. His will was admitted to probate and letters testamentary granted to his son Robert Leo. Two administration accounts have been filed by the executor and there is left in his hands for distribution under the will the sum of $24,467.62. Under the will $20,000 of this amount is to be distributed to the Fidelity Trust Company, Trustee, and $4,467.62 to Robert Leo Selby, residuary legatee.

The contention of the appellant is that the transfers made in the months of July and August, 1944, to the Fidelity Trust Company, trustee under the deed of trust, adeemed the provision in the will of $20,000 to the Fidelity Trust Company, trustee. Appellees deny this contention.

An ademption by advancement results when a parent, subsequent to the date of the will, makes a gift to a child, in substantial amount, of similar property as that contained in the will. This rule was adopted by courts of equity to prevent a child from getting a double portion, it being supposed that a parent would treat each child equally, as each child is entitled to the same claim upon his bounty. This presumption can be rebutted by evidence that the parent did not intend a gift made subsequent to his will to be an advancement, but to have been made independent of the provision for the child in his will. *Miller on Construction of Wills*, Sec. 144; *Parks v. Parks*, 19 Md. 323; *Smith v. Darby*, 39 Md. 268; *Wallace v. DuBois*, 65 Md. 153, 4 A. 402; *Harley v. Harley*, 57 Md. 340; *Dilley v. Love*, 61 Md. 603.

In *Harley v. Harley, supra*, the Court said:

"An advancement, in legal contemplation, is simply the giving, by anticipation, the whole or part of what it is supposed the child or party advanced would be entitled to receive on the death of the party making the advancement. It does not involve the elements of legal obligation or future liability on the part of the party advanced,

*but it is a pure and irrevocable gift, and must result from a complete act of the intestate in his lifetime, by which he divests himself of all property in the subject, though in some cases, and under some circumstances, it may not take effect in possession until after the intestate's death. Clark v. Wilson, 27 Md. 693, 700; Edwards v. Freeman, 2 P. Wms. 440, 446; 2 Wms. on Ex'rs., 1289, 1291-2."* (Italics supplied.)

In *Dilley v. Love, supra,* it is stated:

"* * * it is settled that in this State, as in England, a gift of money or property by a parent to a child is presumptively an advancement, but that this presumption may be repelled by evidence proper for the purpose; in other words whether such gift takes the character and legal properties of an advancement, or those of a full and absolute gift without a view to a portion or settlement, depends on the intention of the donor, and that intention may be ascertained by parol evidence of the donor's declarations at the time of executing the conveyance or making the gift, or of the donee's admissions afterwards, or by proof of facts and circumstances from which the intention may be inferred."

In *Wallace v. DuBois, supra* [65 Md. 153, 4 A. 403], it is said:

"Where a father give a legacy to a child without stating any particular purpose for which it is given, the legacy is in itself regarded as a portion of the estate intended for such child. And if the testator afterwards makes an advancement to such child on his marriage or upon going into business, the money thus advanced will be presumed to be in payment or satisfaction of the legacy, either *pro tanto* or in full, as the money advanced may be equal to or less than the legacy. This presumption is founded on the equitable principle that a father in making a distribution of his property by will among his children, means to give to each the amount which he ought to have, in view of the claims of all upon his bounty; and if he afterwards deems it proper to make an advancement to one or more of them, the amount thus advanced

ought to be deducted from the portion of the child benefited. It is a rule adopted by Courts of equity to prevent a child from getting a double portion, an inequality which it is but fair to presume the testator did not intend."

From these decisions of our predecessors, it is the settled law of this State that an advancement of a portion made to a child in the will of a parent, subsequent to the date of the will, is presumed to adeem the legacy provided in the will for the child. This presumption can be overcome by evidence that shows that the gift was not an advancement, but was made independent of and apart from the legacy provided for the child in the will, and evidence will be received to support the presumption. This presumption does not apply where the gift and advancement was made to one to whom the testator does not stand in *loco parentis*. In such cases the question would turn on the provisions of the will, or on a writing of the testator showing he intended the advancement to be in substitution for the legacy provided in the will. This in turn might involve a construction of the will. *Pomeroy's Equity Jurisprudence,* 5th Ed. (Symons), Secs. 563, 564. But this case does not require a construction of Mr. Selby's will.

At once the question is presented, did the testator, by the addition to the *corpus* under the trust deed in July and August, 1944, make an irrevocable gift to his son, Edward I. Selby, assuming if such was the case it would constitute an ademption of the bequest to the Trust Company under his will? It is true that the provisions of the trust deed are not technically testamentary in character, but its provisions, like the provisions in his will, are ambulatory and could be altered, changed, or destroyed by Mr. Selby during his lifetime. There existed, therefore, a *locus poenitentiae*. And if a *locus poenitentiae* existed, then the gift to his son was contingent on whether he would change, alter, or revoke the provisions made for his son in the trust deed or his will.

In *Milholland v. Whalen*, 89 Md. 212, 43 A. 43, 44 L. R. A. 205, it was held if there is a *locus poenitentiae* there is no gift. The opinion in that case has been followed by this court in a number of cases, and it is the law of this State.

In *Spinks v. Robins*, 2 Atkyns 491; 26 E. R. 696, it was said a satisfaction of a legacy could not rest on a contingency, because such satisfaction was not certain. To use the words of the court in that case:

"Now, in the construction upon double portions, it has always been of weight, that they were both certain."

It is apparent that the provisions made for Edward I. Selby, in the will and in the trust deed, were uncertain, as both instruments could have been revoked during the life of Mr. Selby.

It is contended by appellant that the difference in ulterior limitations will not prevent an ademption. In the deed of trust the limitation is to two granddaughters; in the will, the bequest to the testamentary trustee, after the life estate, the limitation over is to three granddaughters. This difference, and there are other differences, it is said does not prevent the additions to the corpus of the trust estate during the life of the testator, subsequent to the date of the will, from adeeming the bequest to the testamentary trustee. Several English cases are relied on to support this contention.

In *Twining v. Powell*, 2 Collyer 262; 63 E. R. 726, the testatrix provided in her will for Lydia Mosse. Thereafter she endeavored to escape a legacy duty, consulted her banker, who consulted his lawyer. She caused a transfer of 12,000 pounds consols to be made into the joint names of herself and Lydia Mosse. She crossed out, in ink, a provision for 10,000 pounds in her will and at the foot of the will signed the following memorandum: "I have erased the gift of 10,000 pounds to Lydia Mosse, having provided for her in my life." The testatrix stood in *loco parentis* to Lydia Mosse. This was held to be an ademption.

In *Monck v. Monck,* 1 Ball and Beatty 298, the testator bequeathed to his brother 5,000 pounds, and contemplating his marriage, declared that in such event it should be applied as a provision for his family. He advanced his brother 1,000 pounds; upon his marriage settled 4,000 pounds upon him and his family. Testator stood in *loco parentis* to the brother. It was held that the legacy was adeemed by settlement.

In *Lord Durham v. Wharton,* 3 C. & F. 146; 6 E. R. 1392, William Lambton bequeathed to his niece, Susan Lambton, a legacy of 5,000 pounds, which he charged upon real estate devised to his brother, John Lambton (the father of Susan). John Lambton, by his will, bequeathed 10,000 pounds to Susan. Upon her marriage he gave her a portion of 15,000 pounds, and in the articles of agreement, upon marriage, it was stated that such portion was in satisfaction of all sums that she was entitled to under the will of the testator's brother, William Lambton. This was held to be a satisfaction. *Powys v. Mansfield,* 3 My. & Cr. 359; 40 E. R. 964, involved a marriage settlement. The bequest was satisfied by the settlement.

In *Platt v. Platt,* 3 Simons 503; 57 E. R. 1086, a testator created a trust of 10,000 pounds, income to go to his daughter for life. When she married, one moiety to be paid her or her husband and the other held in trust and interest thereon paid the daughter for life, then in trust for her children, and if she had no children then to sink into the residue of the estate, which was given to two sons. The daughter married and the father settled 10,000 pounds in trust for the daughter for life and after her death her husband for life and after the decease of the survivor, in trust to the children of the marriage, as the husband and wife should jointly appoint, and in default thereof the survivor should appoint, and in default of any appointment, in trust for the issue of the marriage, and on failure of issue, then in trust for the issue of the testator living at the death of the survivor of the husband. Held that the provision made by the settlement was a satisfaction of the legacy.

In *Phillips v. Phillips,* 34 Beav. 19, 55 E. R. 538, the testator created a trust of 7,000 pounds, interest to be paid to wife for life, with the remainder to daughter for life, remainder to her children of any marriage. When she married, her father settled on her 19,000 rupees Indian stock; on her husband for life, remainder to her for life, with the remainder to her children of that marriage. The evidence showed that testator's intention was to substitute the settlement for the bequest in the will. This was held to be an ademption. These cases are distinguishable from the case at bar because they all involve outright gifts and not ambulatory and revocable instruments, such as we have before us in this case. As there is no presumption as to a double portion to one not standing in *loco parentis,* there is no presumption to rebut or support, though when such a presumption exists it may be rebutted or supported by parol evidence not inconsistent with the writings involved. *Pomeroy's Equity Jurisprudence, supra,* sec. 563. It is, therefore, clear that parol evidence was inadmissible to show the intention of Mr. Selby. There are cases where parties do not stand in *loco parentis* where such testimony could be offered. Such evidence would be proper where the question was whether a bequest was intended in payment of a debt owed the devisee by the testator. It could be shown that the testator owed the devisee no money. The case of *Loyola College v. Dugan,* 137 Md. 545, 113 A. 81, is also an instance where the parties did not stand in *loco parentis,* but evidence as to the intention of the testator was received to show that an advancement was to be applied to the specific purpose of a bequest in the will to be used for the building of a church.

The case at bar is not that kind of case. Without reviewing the evidence in this case, it is sufficient to say, even if it was properly received, it does not establish the fact that the testator, by the additions to the trust estate, intended to adeem the testamentary trust set up in his will.

*Decree affirmed, with costs to appellees.*