RHEIN ET AL. *v.* WHELTLE ET AL., EXECUTORS, ET AL.

[No. 43, October Term, 1954.]

2

*Decided December 14, 1954.*

*Motion for rehearing and/or modification of opinion, filed January 11, 1955. Rehearing denied and modification as to costs granted, January 20, 1955.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Noah A. Hillman,* for appellants.

*William D. Macmillan* and *William A. Fisher, Jr.,* with whom were *Semmes, Bowen & Semmes,* on the brief, for Herbert K. Ireland, appellee.

Submitted on brief by *Harley, Wheltle & Victor* for Albert F. Wheltle, an executor, appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This proceeding was brought in the Orphans' Court of Baltimore City by Albert F. Wheltle, one of the three executors of the estate of Laura V. King, deceased, to determine whether a bequest of $12,000 which she made by her will in 1948 to Herbert K. Ireland was adeemed by a gift of $12,000 which she made to him in 1949.

The proceeding was filed under the section of the Maryland Testamentary Law which provides that any executor may petition the Orphans' Court for a meeting of persons entitled to legacies or the residue of the testator's estate on some day named by the Court, and payment may be then and there made under the Court's direction and control, subject, however, to such adjournments from time to time as the Court shall deem proper to order; and such payment made under the direction and control of the Court shall protect and indemnify the executor acting in obedience to it. Code 1951, art. 93, sec. 154.

The clause of the will in question reads as follows: "I give and bequeath to Herbert K. Ireland the sum of twelve thousand dollars ($12,000), in full settlement and payment for the services he rendered to me during my lifetime, and my spindle desk."

The gift was evidenced by the following memorandum: "I, Laura V. King, Give unto Herbert Ireland a sum of ($12,000) twelve thousand Dollars which he is to remove

from my safe deposit box with my full permission and said amount is to be his own wholly and completely. Day 18 of May, 1949. Laura V. King."

The meeting in this case was held in the Orphans' Court on September 23, 1952, and at numerous sessions thereafter pursuant to proper adjournments. It was shown that Mrs. King in 1939, when she was nearly 80 years old, inherited some money, and she asked Mr. Ireland, whom she had known many years, to advise her on financial matters. During the period of five years from 1939 to 1944, Mr. Ireland rendered the aged woman many services. In 1944 he moved to New York.

During the next five years, from 1944 until her death in 1949, Mrs. King depended largely upon Gerald J. Rhein, of Towson, for financial advice. On April 26, 1948, she gave permission to both Mr. Rhein and Mr. Ireland to enter her safe deposit box. Mr. Ireland, although no longer residing in Maryland, still had a key to the box.

In 1945 Mrs. King executed a will by which she bequeathed $8,000 to Mr. Ireland "in full satisfaction and payment for my indebtedness to him for services he rendered me during my lifetime."

On March 8, 1948, Mrs. King executed a new will. By this final will, which was written by Mr. Wheltle, Mrs. King increased the legacy for Mr. Ireland from $8,000 to $12,000, gave the residue of her estate to Mr. Rhein and Elsie Rhein, his wife, and appointed Mr. Rhein, Mr. Ireland and Mr. Wheltle the executors of her estate.

After suffering a heart attack, Mrs. King was taken to the Maryland General Hospital for treatment. On January 31, 1949, she was moved from the hospital to the Wheeler Nursing Home on Park Avenue.

On May 1, 1949, Mrs. King wrote a letter in fairly legible handwriting to Mr. Ireland urging him to come to see her. Her message was as follows: "Herbert— Please come to Baltimore as soon as possible. I want to see you on business. There is 12,000 Dollars in Bank waiting for you and more if you will attend to things

for me. Please come at once. Can talk things over. I don't feel as if I will live much longer. Laura. I have made an effort to write. Bring your safe deposit key."

Mrs. Lillian Ireland, Mr. Ireland's sister-in-law, who came to the nursing home two or three times a week to see Mrs. King, addressed the envelope for her. The letter was sent to, and received by, Mr. Ireland at Ridgewood, New Jersey.

It appears from the evidence that Mr. Ireland left for Baltimore on May 16. He conferred with Mrs. King on May 18. On that day she gave him the memorandum permitting him to remove $12,000 from her safe deposit box. It is conceded that he took that amount from Mrs. King's box in the Drovers and Mechanics office of the Maryland Trust Company on May 18 or 19. On May 19 he returned home. Mrs. King died on May 20 at the age of nearly 90.

On May 6, 1954, the Orphans' Court passed a final order of distribution allowing Mr. Ireland the bequest of $12,000. Mr. and Mrs. Rhein appealed from that order, claiming that the taking of $12,000 from Mrs. King's safe deposit box a day or two before her death worked an ademption of the bequest.

At the outset we think it is appropriate to make plain the distinction between this case and those cases where the subject matter of the gift is consumed, lost or sold after the execution of the will. The principle of ademption by alienation or extinguishment is applicable only to specific legacies. *Gardner v. McNeal*, 117 Md. 27, 36, 82 A. 988, 40 L. R. A., N. S., 553. In 1900 the Supreme Court of the United States ruled that the ademption of a specific legacy is effected by the extinction of the thing or fund bequeathed, and the intention that the legacy should fail is presumed. *Kenaday v. Sinnott*, 179 U. S. 606, 21 S. Ct. 233, 237, 45 L. Ed. 339. In 1916 the New York Court of Appeals asserted that it was once the law that ademption was dependent upon intention, but that was no longer the law in England and New York; that under modern law the court looks to the fact of change, and

when that is ascertained does not trouble itself about the reason for the change. *In re Brann,* 219 N. Y. 263, 114 N. E. 404. In 1925 the Maryland Court of Appeals, following the New York rule, held that ademption is to be sought in the facts pertaining to the loss or destruction of the thing specified in the legacy, or loss of its identity as specified, rather than in any change of intention on the testator's part. *Elwyn v. De Garmendia,* 148 Md. 109, 112, 128 A. 913, 40 A. L. R. 553.

In the case before us there is no claim of ademption by alienation or extinguishment. The question here is whether there was an ademption by advancement, or, in the language of some courts, a satisfaction of the legacy. The law is established in this State that when a testator in his lifetime pays to a legatee the amount of money given by the will, and such payment is intended to be in satisfaction of the legacy, the legacy is thereby adeemed. *Gallagher v. Martin,* 102 Md. 115, 118, 62 A. 247. Thus the question whether a pecuniary legacy is adeemed by an *inter vivos* gift made by a testator to the legatee after the execution of the will depends upon the intention of the testator. If the testator intended that the subsequent gift should abrogate or reduce the legacy, it will be held adeemed either in whole or in part; but if the testator intended that the legatee should receive both the testamentary benefit and the *inter vivos* benefit, then it will be held that the legacy was not adeemed.

It is accepted as a general rule that where a testator is not the parent of a legatee or does not stand *in loco parentis,* it will be presumed that a subsequent gift was not in satisfaction of the legacy. On the other hand, it is a general rule, subject to exceptions in some cases, that where a testator is the parent of the legatee or *in loco parentis,* and after executing his will makes a gift to the same child, it will be presumed that the gift was intended to be in satisfaction of the legacy, and unless the presumption is rebutted the legacy will be considered as adeemed in full or *pro tanto,* depending upon whether the gift was equal to or less than the legacy.

This principle was founded upon the equitable presumption that a parent, who has the natural obligation to provide for all of his offspring, would not, after having established the portion that each should receive from his estate, give one of his children a double portion of his estate to the detriment of the others. *Wallace v. Du Bois,* 65 Md. 153, 159, 4 A. 402; *Selby v. Fidelity Trust Co.,* 188 Md. 192, 51 A. 2d 822; *Carmichael v. Lathrop,* 108 Mich. 473, 66 N. W. 350, 32 L. R. A. 232; *Richardson v. Eveland,* 126 Ill. 37, 18 N. E. 308.

However, it is also well established that if a testator has given a legacy in order to accomplish a certain purpose, and he subsequently accomplishes the purpose himself, the legacy is presumed to be adeemed, whether or not a presumption of ademption would have arisen otherwise. *Associated Professors of Loyola College v. Dugan,* 137 Md. 545, 113 A. 81; *Louisville Trust Co. v. Southern Baptist Theological Seminary,* 148 Ky. 711, 147 S. W. 431; *Wheeler v. Wood,* 104 Mich. 414, 62 N. W. 577; *Austin v. Austin,* 147 Neb. 109, 22 N. W. 2d 560; 4 *Page on Wills,* Lifetime Ed., sec. 1543. It is likewise specifically held that where a testator, even though not the parent of the beneficiary or *in loco parentis* to him, gives the legacy as a compensation for his services and thus as a satisfaction of a debt, such legacy is adeemed by a subsequent payment by the testator in the amount of the legacy. *Gallagher v. Martin,* 102 Md. 115, 62 A. 247; *Turner's Estate,* 167 Pa. 609, 31 A. 867. This rule is a combination of the doctrine of satisfaction and the doctrine of ademption. The legacy given by the testator is regarded as conditioned upon the existence of the debt which it was to satisfy, and accordingly is adeemed by the payment of such debt, even though the testator did not occupy the parental relation to the beneficiary.

In the instant case the testatrix explicitly stated in her will that the bequest to Mr. Ireland was in settlement for all the services he had rendered for her during her lifetime. The memorandum which the testatrix gave to Mr. Ireland does not cast any light on the question of

whether or not it was intended to be in satisfaction of the bequest which was for identically the same amount. Mrs. King's letter, asking Mr. Ireland to come to Baltimore, is not conclusive and does not cast much light on the question, although she does say that she wants to see him "on business" and offers to pay more if he will attend to things for her. Thus the documentary evidence is consistent with Mrs. King's intention to pay Mr. Ireland before her death so that he would not have to wait for distribution.

We must also remember that Mr. Ireland left the State of Maryland in 1944, and Mrs. King called on Mr. Rhein for financial advice during the last five years of her life. Mrs. King bequeathed to Mr. Rhein and his wife $4,000 and several pieces of personal property and also the residue of her estate. It was stated that there is about $69,000 in the estate, and that it would require more than $75,000 to pay all of the bequests if Mr. Ireland were allowed $12,000 in addition to the $12,000 which he took from the safe deposit box. If such double payment were allowed, Mr. Ireland would get from Mrs. King a total of upwards of $24,000, while the Rheins and the other legatees would not receive their bequests in full and would not receive any residue.

The presumption that the cash payment of $12,000 was intended to be in satisfaction of the $12,000 legacy was strongly supported by the testimony of Mrs. Lillian Ireland, Mr. Ireland's sister-in-law. Mrs. Ireland, who had been an intimate friend of Mrs. King for more than thirty years, testified that Mrs. King talked to her on a number of occasions about the bequest of $12,000 to Mr. Ireland. In telling about a conversation she had with Mrs. King about three weeks before she died, she testified as follows: "She told me that she was asking Mr. Ireland to come down; that she was going to give him his $12,000 that she had left him in her will now; and I exclaimed, 'Mrs. King, you can't do that, he could probably claim the $12,000 through the will.' And she

said, 'Oh! Herbert wouldn't do anything like that!' And I made no reply to that."

Mrs. Ireland further testified that Mr. Ireland came to Baltimore shortly afterwards, and that Mrs. King told her about his visit. "She told me," Mrs. Ireland recalled, "that Herbert came down, and that he said he would not take his $12,000 that she had left him now, that he would wait until she was gone, and everybody received theirs." Mrs. Ireland visited Mrs. King again only a few days before her death, and again Mrs. King discussed her plan to pay Mr. Ireland. She testified that Mrs. King told her she expected Mr. Ireland to come to Baltimore and "she was going to let him go to the safe deposit box and get the $12,000 that she had left him."

Mrs. Lillian L. Mead testified that she visited Mrs. King on the day before her death and she stated she was "very much pleased that she had settled everything with Mr. Ireland."

The presumption was also supported by Mrs. Eleanor H. Shipley, with whom Mrs. King boarded in 1948. Mrs. Shipley was offered to show that Mrs. King asserted both before and after she made her will "that she wanted Mr. Ireland to be paid for his services, and that was all she wanted him to have; that she was about to make her will, and that that is what she would provide in the will for him."

In opposition to this strong testimony, there is only the statement of Alice Wheeler, manager of the nursing home, that Mrs. King told her she wanted Mr. Ireland to have $12,000 in addition to the legacy. But Miss Wheeler also testified that Mrs. King requested her to phone Mr. Wheltle to tell him that she wanted to change her will in order to give Mr. Ireland "one-third of her estate." Her two statements thus appear contradictory.

In view of the presumption that arose in this case, to which the Orphans' Court evidently gave no weight, and in view of the fact that the evidence was strong that the testatrix intended the gift of $12,000 to be in satisfaction of the legacy, we must reverse the order appealed from

and remand the case with instruction to the Court below to modify the order by eliminating the allowance for Mr. Ireland.

The Code provides that in appeals from the Orphans' Courts, the awarding of costs shall be in the discretion of the Court of Appeals. Code 1951, art. 5, sec. 71; *Watkins v. Barnes*, 203 Md. 518, 102 A. 2d 295. In the exercise of that discretion, we will direct that the costs of this appeal be paid out of the estate.

*Order reversed and case remanded, the*
*costs to be paid out of the estate.*