736 A.2d 1205

The NATIONAL SOCIETY OF the DAUGHTERS
OF the AMERICAN REVOLUTION

v.

Bruce E. GOODMAN, Personal Representative
of the Estate of Olive Swindells et al.

No. 05531 Sept. Term, 1998.

Court of Special Appeals of Maryland.

Sept. 9, 1999.

Christine N. Kearns (James H. Hamlin and Shaw, Pittman, Potts & Trowbridge, on the brief) Washington, DC, for appellant.

Scott T. Kragie (William C. O'Neill and Squire, Sanders & Dempsey, L.L.P., on the brief) Washington, DC, for appellees.

Argued before WENNER, HARRELL, and SONNER, JJ.

SONNER, Judge.

■ This case represents an appeal from a judgment of the Circuit Court for Baltimore County, which rejected a claim by appellant, the National Society of the Daughters of the American Revolution ("DAR"), to a portion of the estate of one of its deceased members. The court found that appellant failed to establish a general charitable intent on the part of the testator, and therefore declined to apply the equitable doctrine of cy pres [1] to reform the testator's ineffective bequest. We are now called upon to decide the following issues:

---

1. *Cy pres* is a saving device by which the intention of the testator is carried out as near as may be, when a charitable bequest is impossible, illegal, or impractical to enforce.

I.   Did the trial court abuse its discretion in admitting the hearsay statements of the testator?

II.  Did the trial court err in finding that the evidence was in equipoise on the issue of the testator's general charitable intent?

For the reasons discussed below, we find no error and affirm the judgment of the lower court.

On October 25, 1994, Olive Swindells hired an attorney to prepare a will that would establish a trust to provide for the care of her husband, if she predeceased him.  As part of her instructions, Mrs. Swindells indicated that she wanted the will to contain a residuary clause, which would leave 80% of her estate to appellee, Gallaudet University ("Gallaudet"), and the remaining 20% to the DAR Nursing Home for the benefit of the destitute members of the DAR. Although Mrs. Swindells was ninety-four years old at the time, the attorney noted that she appeared competent and was able to understand the significance of a fully executed and witnessed will.[2]  Following the meeting with Mrs. Swindells, the attorney advised the local Maryland chapter of the DAR that his client wished to leave a bequest to the DAR Nursing Home facility that cares for indigent members of the DAR. The attorney then prepared a last will and testament for Mrs. Swindells, which established a trust for Mr. Swindells, and devised the residue estate as follows:

1.  80% to Gallaudet College [now Gallaudet University].

2.  20% to the (DAR) Daughters of the American Revolution Nursing Home for the use of destitute members of the (DAR) Daughters of the American Revolution.

On November 2, 1994, the attorney presented the will to Mrs. Swindells, who approved and properly executed it.

On December 15, 1994, the attorney received a written reply from the DAR, which stated that the Maryland chapter did not maintain a nursing home facility.  The letter suggested

---

2.  We note, however, that competence to execute a will was not an issue at trial.

that the bequest could be used for other purposes, such as establishing a scholarship fund in Mrs. Swindells's name or making renovations to several buildings owned by the DAR. The attorney promptly passed this information on to Mrs. Swindells, who stated that "because the nursing home did not exist, she wished to leave all of her residuary estate to Gallaudet." The attorney then promptly prepared a revised will, which provided a trust for Mr. Swindells and named Gallaudet as the sole residuary legatee.

Mr. Swindells, however, died before his wife executed the revised will. Following the funeral, Mrs. Swindells instructed the attorney to revise her will once again to delete the trust for her husband, and to restrict the bequest to Gallaudet for scholarships only. The attorney then prepared another revised will, which included the following bequest:

> ITEM II: I hereby give, devise and bequeath, all of the rest residue and remainder of my Estate to [Gallaudet] College, an educational institution now located in Washington D.C. This gift may, in the discretion of the Board of Trustee[s][be] merged and mingled with and become a part of the general investment assesses of said College, and shall be known as the BERTRAM L. SWINDELLS and OLIVE R. SWINDELLS Scholarship Fund, and the income, but not the principal, thereof shall be used to establish a Scholarship or Scholarships and the selection of the beneficiaries thereof shall be determined by the President or such other authority as [may be] designated by the said Board of Trustees for said purpose.

The attorney called Mrs. Swindells to schedule an appointment for execution of the final version of the will, but was unable to meet with her because Mrs. Swindells indicated that she was preoccupied with other matters.[3] This was the final communication between the attorney and Mrs. Swindells, for on March 16, 1995, Mrs. Swindells died from a sudden stroke,

---

3. Mrs. Swindells stated that she was preparing to take her driver's license renewal test and attending to details following her husband's death.

and without formally executing any testamentary document other than the original November 2, 1994 will.

Following Mrs. Swindells's death, her attorney advised Gallaudet that it was the sole legatee of Mrs. Swindells's estate. Counsel for the DAR, however, contacted the attorney and informed him that the DAR would assert a 20% claim to the estate under the doctrine of *cy pres*. The attorney elected to make a partial distribution of $3 million to Gallaudet, which represented the 80% of Mrs. Swindells's estate that was not in dispute, and filed a petition for instructions with the Orphans Court of Baltimore County as to the remaining 20% of the estate. On February 27, 1996, a three-judge panel of the Orphans Court issued a brief, written order, granting the disputed 20% of the estate to the DAR under the doctrine of *cy pres*. Gallaudet noted an appeal to the Circuit Court for Baltimore County, which affirmed the Orphans Court's decision, holding specifically that Mrs. Swindells possessed a general intent to devote the estate to charity. Gallaudet appealed once again and this Court, in *Gallaudet University v. National Society of the Daughters of the American Revolution*, 117 Md.App. 171, 699 A.2d 531 (1997), held that courts should consider both the language of the will, as well as extrinsic evidence, in determining whether a testator has manifested a general charitable intent. We then remanded the case to the circuit court to ascertain whether Mrs. Swindells manifested a general charitable intent in conformance with our decision. In doing so, we advised the trial court to conduct further fact finding with respect to the evidentiary issues concerning Mrs. Swindells's post-execution, out-of-court statements to her attorney. On remand, the court found that both statements were admissible hearsay under Md. Rule 5–803(b)(3), but that the DAR failed to establish that Mrs. Swindells harbored a general charitable intent to leave 20% of her estate to the DAR. This appeal followed.

The DAR's first contention on appeal is that the circuit court erred in admitting the testimony of Mrs. Swindells's attorney as to his client's intention to leave the entirety of her residuary estate to Gallaudet. Undoubtedly, Gallaudet

offered the statements at issue to prove the truth of the matter asserted therein, and consequently they constitute hearsay. *See* Md. Rule 5–801(c). Our task, therefore, is to determine whether the evidence is nevertheless admissible under one of the many exceptions to the hearsay rule. The circuit court admitted the disputed statements under Md. Rule 5–803(b)(3), commonly referred to as the "state of mind" or "statement of intent" exception to the hearsay rule. That exception provides:

> (3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or the declarant's future action, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Md. Rule 5–803(b)(3). Under this exception, forward-looking statements of intent are admissible in order to prove that the declarant subsequently took a later action in accordance with that stated intent. *Farah v. Stout,* 112 Md.App. 106, 119, 684 A.2d 471 (1996). *See also Ebert v. Ritchey,* 54 Md.App. 388, 398, 458 A.2d 891 (1983). By contrast, backward-looking statements, i.e., declarations of memory or belief, are excluded because they present the classic hearsay dangers of memory and narration. JOHN W. STRONG, MCCORMICK ON EVIDENCE § 276 at 241 (4th ed.1992). The distinction between these types of evidence is not always perfectly clear; suffice it to say that forward-looking statements cast light upon the future, while backward-looking statements point backwards toward the past. *Shepard v. United States,* 290 U.S. 96, 106, 54 S.Ct. 22, 78 L.Ed. 196 (1933).

Although backward-looking statements are generally inadmissible, the Federal Rules of Evidence have carved out a limited exception for post-executory declarations of memory or belief relating to the terms of a declarant's will. STRONG, *supra,* at 241. Specifically, this exception exempts backward-

looking statements relating "to the execution, revocation, identification, or terms of declarant's will," from the general prohibition against declarations of memory or belief introduced to prove the fact remembered or believed. FED. R. EVID. 803(3).[4] The notes of the advisory committee indicate that the exception rests primarily upon grounds of necessity and expediency, rather than logic. Moreover, as this Court noted in *Ebert:*

> A person's state of mind, feelings or emotions can only be manifested to others by words, oral or written, gestures, countenance, attitude and mannerisms. While the person is alive, his own memory of what his state of mind was at a particular time is more likely to be true than that of a bystander. Yet, when the person has died, there can be no other way of proving his or her intent except by testimony of others as to the decedent's state of mind as evidenced by words, gestures, mannerisms and the like.

*Ebert,* 54 Md.App. at 397, 458 A.2d 891.

We hold that the testimony of Mrs. Swindells's attorney as to the testator's intent to leave the entirety of her residuary estate to Gallaudet is admissible under the state of mind exception to the hearsay rule. The statements at issue do not indicate that the testator intended to perform a future act; rather, the testator simply expressed what her testamentary intention would be if the bequest to the DAR nursing home lapsed. The decedent's post-executory, out-of-court statements to her attorney represent backward-looking declarations relating to the terms of the declarant's will. As such, they fall squarely within the language of Md. Rule 5–803(b)(3) as statements of memory or belief concerning the execution, revocation, identification, or terms of a declarant's will. The trial court properly found that the disputed evidence was admissible under the state of mind exception to the hearsay rule.

---

4. Md. Rule 5–803(b)(3) is virtually identical to Federal Rule 803(3).

■ We next address the issue of whether the court erred in finding that the DAR failed to establish a general charitable intent on the part of Mrs. Swindells. The record, according to the DAR, is replete with evidence demonstrating that Mrs. Swindells manifested a general charitable intent, and therefore the court should have applied the doctrine of *cy pres* to reform the ineffective bequest.

■ Maryland's Uniform Charitable Trusts Administration Act provides, in pertinent part:

> If a trust for charity is or becomes illegal, or impossible or impracticable of enforcement or if a devise or bequest for charity, at the time it was intended to become effective, is illegal, or impossible or impracticable of enforcement, and if the settlor or testator manifested a general intention to devote the property to charity, a court of equity, on application of any trustee, or any interested person, or the Attorney General of the State, may order an administration of the trust, devise or bequest as nearly as possible to fulfill the general charitable intention of the settlor or testator.

MD.CODE (1991), Estates and Trusts § 14–302. Thus, the following requirements must be satisfied before a court can apply the equitable doctrine of *cy pres* to reform an ineffective charitable bequest: (1) a devise to charity; (2) that is illegal, impossible, or impractical to enforce; (3) and the testator has manifested a general charitable intent. *Gallaudet,* 117 Md. App. at 201–02, 699 A.2d 531. A court may consider both the express language of the instrument, as well as extrinsic evidence, in determining whether the testator possessed a general charitable intent. *Id.* at 206, 699 A.2d 531. In doing so, the pertinent inquiry is as follows:

> If the testator had known that it would be impossible to follow the express terms of the charitable bequest, would he or she prefer to bequeath the funds to a similar charitable purpose or have his or her largess be treated like all other ineffective bequests.

*Id.* at 207, 699 A.2d 531 (citing to *Estate of Crawshaw,* 249 Kan. 388, 398, 819 P.2d 613, 620–21 (1991)).

Mrs. Swindells's last will and testament of November 2, 1994, the only testamentary document that Mrs. Swindells actually executed, devises 20% of her residuary estate to the DAR Nursing Home for the use of the destitute members of that organization. Because the Maryland DAR does not maintain a nursing home, the bequest in question represents a devise to charity that is impossible to enforce. Hence, the first two elements of the doctrine of *cy pres* have been satisfied, and the only matter we must address is whether the testator manifested a general charitable intent.

Here, Mrs. Swindells learned that the DAR did not operate a nursing home, and promptly instructed her attorney to draft a new will leaving the entirety of her residual estate to Gallaudet. Thus, under the unique circumstances of this case, the testator actually learned that it would be impossible to follow the express terms of the original bequest, and she ordered her attorney to remove the DAR from her will as a result. The trial court could reasonably infer from Mrs. Swindells's post-executory statements to her attorney that she specifically intended to benefit a particular institution, i.e., the DAR Nursing Home, and that she did not possess the general charitable intent to assist the DAR in its activities as required under § 14–302. Accordingly, we affirm the judgment of the lower court.

**JUDGMENT AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**