847 A.2d 510

**YIVO INSTITUTE FOR JEWISH RESEARCH**

v.

**Paul ZALESKI, Personal Representative of the Estate of Jan KARSKI, et al.**

**No. 966, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

April 19, 2004.

528

L. O'Donoghue (Tanya C. Bernstein, Furey, Doolan & Abell, LLP on the brief), Chevy Chase, for appellant.

Jane Moretz Edmisten (Charles H. Fleischer, Oppenheimer, Fleischer, & Quiggle, PC on the brief), Bethesda, for appellee.

Argued before BARBERA, SHARER, and GERARD F., DEVLIN (Retired, Specially Assigned), JJ.

SHARER, Judge.

In this appeal we are called upon to consider the doctrine of ademption by satisfaction (or advancement), a concept of Maryland jurisprudence taken up only infrequently by our appellate courts. Appellant, the YIVO Institute for Jewish Research, asks this Court to reverse a ruling by the Orphans' Court for Montgomery County[1] that it was not entitled to distribution of a bequest in the will of Jan Karski. Appellees are the personal representative of the estate, and two (of several) beneficiaries, the Kosciuszko Foundation and The American Center of Polish Culture.

Two questions are presented for our review, which, reordered, are:

1. Did the Orphans' Court err in admitting testimony as to oral statements made by Decedent substantially after satisfaction of Decedent's pledge to YIVO?

---

1. There is no separate Orphans Court in Montgomery County (or in Harford County) as is the case in every other Maryland sub-division. This case was heard and decided by a judge of the Circuit Court for Montgomery County, sitting as the Orphans' Court, pursuant to Md. Code Ann. Est. & Trusts § 2–106(c)(2001 Repl.Vol.)

2. Did the Orphans' Court err in holding that Decedent's specific bequest to YIVO was adeemed by satisfaction?

For the reasons herein stated we answer each of the questions "no" and shall affirm.

## FACTUAL and PROCEDURAL HISTORY

### *The Decedent*

Jan Karski was a hero of the Polish underground movement during World War II, reporting to the Allied powers until he was captured by the Nazis. During his confinement he was tortured and suffered many serious injuries. After attempting suicide to avoid making disclosures that could have endangered others in the underground, he was taken to a Nazi-controlled hospital from which he was later rescued by movement members. Among those participating in the rescue, which resulted in the death of several of the rescuers, was Zofia Hanuszkiewicz, who spent several years in a German prison camp for her role. She was also a beneficiary of Dr. Karski's estate.[2]

At the end of World War II, Dr. Karski emigrated from Poland to the United States and settled in the Washington, D.C. area, where he taught for many years at Georgetown University. At the time of his death, he resided in Montgomery County.

Dr. Karski was a Roman Catholic who was involved in the culture of his native Poland. As such, he developed strong ties with several Polish organizations, including the Kosciuszko Foundation ("Foundation") and The American Center of Polish Culture ("Center"). Both of those organizations are beneficiaries of his estate.

After settling in the United States, Dr. Karski attempted to mend the relationship between Jews and Poles. To that end, he sought to memorialize his deceased wife, Pola Nirenska, and himself, through an annual award for "[l]iving authors of

---

2. Ms. Hanuszkiewicz survived Dr. Karski, but has since died.

published works ... dealing with or otherwise describing contribution to Polish culture and Polish science by Poles of Jewish origin and by Polish Jews from the Middle Ages to the current time." [3]

In furtherance of his intent, he entered into an agreement with appellant, the YIVO Institute for Jewish Research in New York City ("YIVO"),[4] whereby he would provide YIVO with a $100,000 endowment to fund the annual award. The pledge took the form of a letter agreement dated November 25, 1992, which provided in pertinent part:

> The endowment will consist of a gift of $100,000.00 in cash to be made by me to YIVO in my Will, or in cash and/or marketable securities of the same total market value during my lifetime....

For reasons not clear from the record, a second identical letter was signed by Dr. Karski on February 25, 1993.

Later, on October 15, 1993, Dr. Karski executed a will which contained the following provision: [5]

> *SECOND:* I hereby give and bequeath to YIVO—Institute for Jewish Research (tax exempt organization Dr. Lucjan Dobroszycki and Dr. Ludwik Seidenman)—all my shares of Northern States Power (N.St.Pw.) of which 400 share certificates are located in the Riggs National Bank, Friendship Branch (4249 block of Wisconsin Avenue), Safe Deposit Box 240, and the rest, approximately 1,780 shares,

---

**3.** The biographical information is derived from the briefs of appellants and appellees. No party has taken any exception to the recitations regarding Dr. Karski's history.

**4.** At the hearing, Dr. Alan Nadler, YIVO's former director of research, described the Institute:

The YIVO Institute is an academic research institute library and archive, a resource center for research that was founded in Poland in 1925 in the city of Vilma (ph). which is today Vilnius (ph) Lithuania for—and whose goal is to promote and to facilitate research in the history, culture, and languages of the Jews of eastern Europe, which is primarily the Jews of Poland and Russia, primarily.

**5.** It is believed, but is not absolutely clear, from the record that Dr. Karski prepared his will without benefit of legal advice.

is held by Northern States Power as automatic reinvestment. All these shares (approximately 2,180) should be transferred (not sold) to YIVO.

Beginning in 1995, Dr. Karski transferred to YIVO a number of the shares, named specifically, and bequeathed partially in his will, to the Foundation and the Center. In all, he assigned 1,809 shares of New York State Electric and Gas Corporation and 2,300 shares of the Ohio Edison Company to YIVO between November 28, 1995 and January 22, 1996. He added his personal check in the amount of $2.31 to the stock transfers, bringing the total to an even $100,000.[6] Dr. Karski did not amend his will to reflect the *inter vivos* transfer of stock and cash to YIVO. Had he done so, of course, this litigation would not have occurred.

Dr. Karski died on July 12, 2000, and appellee Paul Zaleski qualified as the personal representative.[7] Because of his earlier gift, the personal representative denied YIVO's request for payment of the bequest on the basis that the gift had been satisfied. The personal representative took the position that the *inter vivos* payments to YIVO "cancelled" the bequest. As a result, appellant filed, on September 25, 2002, a Petition for Order Directing Distribution of Specific Bequest.

The Orphans' Court conducted an evidentiary hearing on June 20, 2003. The court rendered an oral opinion, finding that Dr. Karski intended for his *inter vivos* gifts to YIVO to fulfill the legacy under the will, and that the satisfaction met the requirements for ademption by advancement. Following the entry of final judgment, YIVO filed this timely appeal.

---

6. There is reference in the record to Dr. Karski's having advised YIVO representatives that, should the value of the shares of stock exceed $100,000 on the date of assignment, he expected a refund of the excess.

7. Dr. Karski surrendered his safe deposit box at Riggs National Bank on September 13, 1999. By the time of his death, Northern States Power merged to become X–Cel Energy. Those shares were valued at $113,527.64 at the time of his death.

## STANDARD of REVIEW

■ The applicable standard of review in this action is derived from Maryland Rule 8–131:

(c) **Action tried without a jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Md. Rule 8–131 (2003).[8]

## DISCUSSION

*1. Did the Orphans' Court err in admitting testimony as to oral statements made by Decedent substantially after satisfaction of Decedent's pledge to YIVO?*

Important to the Orphans' Court's factual finding in this case was the testimony of Dr. Hanna–Kaya Ploss, Dr. Karski's close friend, who is the executive director of The American Center of Polish Culture. Appellant argues that the court erred by permitting her to testify about statements made by Dr. Karski concerning ITEM SECOND of his will. YIVO raises alternative arguments: first, that the statements were not made sufficiently close in time to his 1995–96 gift to indicate his intention when making that gift; and second, that the testimony was hearsay.

After YIVO's objection was overruled by the court, Dr. Ploss testified,

---

**8.** Appellant contends that the "clearly erroneous" standard enumerated in Md. Rule 8–131(c) does not apply because this case involves conclusions of law only. Although conclusions of law are afforded no deference by this Court, *ST Sys. Corp. v. Maryland Nat'l Bank,* 112 Md.App. 20, 27, 684 A.2d 32 (1996), the court's determination of whether Dr. Karski intended, at the time he made it, for his *inter vivos* gift to YIVO to satisfy his bequest is one of fact, subject to the clearly erroneous standard of review. *See, e.g., Kobrine, L.L.C. v. Metzger,* 151 Md.App. 260, 277, 824 A.2d 1031 (2003).

I don't know what was in that will, but Dr. Karski was not a compulsive man who would pound on something over and over, but from time to time he said, "You know, maybe I should change my will just in case the Yivo Institute will come back and ask once more for the money when I already have given it to them," and then he always answered his own question, "No. They are much to [sic] decent to do such a thing. No."

\* \* \*

He was absolutely sure they will not come a second time and ask for the money when I have already given it to them, that is something that sticks in my mind, "I have already given them the money."

Dr. Ploss testified that Dr. Karski had made similar statements on several occasions in the years after his gift to YIVO. She also testified that during the ensuing years he never indicated his intention to provide any further gifts to YIVO.

▋ In order for evidence to be admitted, it must be relevant and admissible. Appellant's first argument, that Dr. Karski's statements to Dr. Ploss were too remote in time from his gift, concerns relevance.

### The Relevance of Dr. Ploss' Testimony

▋ Appellant argues that Dr. Ploss' testimony about Dr. Karski's statements to her, made most frequently during the last two years of his life, but on occasion before then, are inadmissible because they are too far removed in time from his 1995–96 gift to YIVO to be considered relevant. Appellant points to no case law supporting this proposition, but treats various treatises as controlling authority.[9]

---

9. Appellant argues, citing 6 Page THE LAW OF WILLS §§ 54.24 and 54.27 at 280:

"Whether a gift ... 'operates as an ademption by satisfaction or not, depends upon the actual intention of the testator which he has **at the time that he makes the gift,** and which is communicated to the legatee, or would be inferred by the legatee from the circumstances under which the gift is made, if he acted as a reasonable man.'

In its brief appellant tells us that "rarely, if ever, should the issue of ademption be decided by matters outside the contemporaneous written record," and cites, as its authority, *Selby v. Fidelity Trust Co.*, 188 Md. 192, 199, 51 A.2d 822 (1947). We do not view *Selby* as supporting appellant's argument as to proximity of the statement. There, the Court noted:

In such cases [where the gift and advancement was made to a person to whom the testator does not stand in *loco parentis* ] the question would turn on the provision of the will, or on a writing of the testator showing he intended the advancement to be in substitution for the legacy provided in the will.

*Id.* at 199, 51 A.2d 822. Nowhere in *Selby* does the Court apply a test of proximity.

■■ We have found no Maryland case that makes the admissibility of a decedent's statements concerning his intentions dependent upon the proximity of the statements to the gift. Although a court may find that statements made distant in time to a gift do not reflect the declarant's intentions upon making the gift, the statements are not inadmissible, as not relevant, simply because they were made after the fact. The nearness or remoteness in time to the statement of intent, *vis a vis* the gift, may, on the facts of a particular case, be significant in determining relevance. Relevancy of testimony is for the trial court's determination. We give great deference to those rulings and will not set them aside absent an abuse of discretion. *See, e.g., J.L. Matthews, Inc. v. Maryland–Nat'l Capital Park & Planning Comm'n*, 368 Md. 71, 91–92, 792 A.2d 288 (2002); *Farley v. Allstate Ins. Co.*, 355 Md. 34, 42, 733 A.2d 1014 (1999).

To determine the decedent's intention, the court may examine extrinsic evidence, including parol evidence, **as long as** the evidence and testimony is closely tied to the time at which the Decedent made the gift. Declarations by a decedent '**must be part of the transaction in order to be admissible** for the purpose of showing [the testator's] intention.' Declarations made 'long after the payment are not admissible' given that they would be 'wholly incompetent' to show the testator's intent at the time of the gift."
(Emphasis in original).

*The Testimony Fit the Exception in Rule 5–803(b)(3)*

Maryland Rule 5–803(b)(3) provides an exception to the general rule that hearsay testimony is inadmissible. Among the exclusions from the operation of the rule against hearsay are:

Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as *intent, plan, motive, design,* mental feeling, pain, and health), offered to prove declarant's then existing condition or the declarant's future action, but not including a statement of memory or belief to prove the fact remembered or believed *unless it relates to the execution, revocation, identification, or terms of declarant's will.*

Md. Rule 5–803(b)(3) (2003) (emphasis added).

The parties contend that two cases interpreting this rule govern our decision, *National Soc'y of the Daughters of the Am. Revolution v. Goodman,* 128 Md.App. 232, 736 A.2d 1205 (1999), and *Farah v. Stout,* 112 Md.App. 106, 684 A.2d 471 (1996), *cert. denied,* 344 Md. 567, 688 A.2d 445 (1997). The Court, in *Farah,* discussed Rule 5–803(b)(3) only briefly. Despite the decedent's comments indicating his intention to provide for appellant and her husband in his will, his will made no such bequest. The Court ruled that statements about the promised bequest were inadmissible under Rule 5–803(b)(3) because no bequest was ever made. 112 Md.App. at 119, 684 A.2d 471. Thus, this Court ruled, "the witnesses' statements were not offered to explain [the decedent's] future conduct, [and] the state of mind exception does not apply." *Id.* The facts of *Farah* are inapposite to the case at hand because the Orphans' Court was not asked to *add* a bequest to a will that was silent, but to determine whether a specific bequest had been fulfilled before Dr. Karski's death.

*Goodman, supra,* is more directly on point. In *Goodman,* the Court determined that the decedent's statements to her attorney of her intentions regarding her outdated will were admissible. 128 Md.App. at 239, 736 A.2d 1205. In that case,

the decedent provided in her will that 80 percent of her residual estate should be bequeathed to Gallaudet University and the remainder to the "(DAR) Daughters of the American Revolution Nursing Home for the use of destitute members of the (DAR) Daughters of the American Revolution." *Id.* at 235, 736 A.2d 1205. After executing the will, however, the decedent learned that the Maryland chapter of the DAR had no nursing home. She then informed her attorney that she wished to leave her entire residual estate to Gallaudet University. *Id.* at 236, 736 A.2d 1205. As a result of the decedent's sudden stroke and death, she was never able to execute a will to that effect. The litigation ensued when the personal representative sought direction from the Orphans' Court regarding the questioned 20 percent of the decedent's residual estate. The DAR prevailed in the Orphans' Court, but the circuit court, after admitting the decedent's statements to her attorney, denied distribution to the DAR. *Id.* at 236–37, 736 A.2d 1205.

On appeal, this Court noted, "[a]lthough backward-looking statements are generally inadmissible, the Federal Rules of Evidence have carved out a limited exception for post-executory declarations of memory or belief relating to the terms of a declarant's will." *Id.* at 238, 736 A.2d 1205. Maryland Rule 5–803(b)(3) contains a similar exception. Quoting an earlier decision, we noted:

> A person's state of mind, feelings or emotions can only be manifested to others by words, oral or written, gestures, countenance, attitude and mannerisms. While a person is alive, his own memory of what his state of mind was at a particular time is more likely to be true than that of a bystander. Yet, when the person has died, there can be no other way of proving his or her intent except by testimony of others as to the decedent's state of mind as evidenced by words, gestures, mannerisms and the like.

*Goodman, supra,* 128 Md.App. at 239, 736 A.2d 1205 (quoting *Ebert v. Ritchey,* 54 Md.App. 388, 397, 458 A.2d 891 (1983)). We held that the decedent's statements were admissible even though

[t]he statements at issue do not indicate that the testator intended to perform a future act; rather, the testator simply expressed what her testamentary intention would be if the bequest to the DAR nursing home lapsed. The decedent's post-executory, out-of-court statements to her attorney represent backward-looking declarations relating to the terms of the declarant's will. As such, they fall squarely within the language of Md. Rule 5–803(b)(3) as statements of memory or belief concerning the execution, revocation, identification, or terms of a declarant's will.

*Id.* at 239, 736 A.2d 1205.

■ The statements made in *Goodman* are similar in kind to the statements made by Dr. Karski to Dr. Ploss. We conclude that his statements to her could easily be considered to be forward-looking. That is, he was articulating the opinion that, as he had already satisfied his gift, there was no need to take future action, to wit, amendment of his will. We find no abuse of discretion in the court's admissibility ruling.[10]

#### 2. Did the Orphans' Court err in holding that Decedent's specific bequest to YIVO was adeemed by satisfaction?

■ Appellant argues that Dr. Karski's *inter vivos* gift to YIVO was sufficiently different in both purpose and kind from that stated in his will to require the Orphans' Court to find that the *inter vivos* gift did not adeem by satisfaction the bequest in his will. Appellees argue, and we agree, that the lodestar of our determination is Dr. Karski's intent. They posit that the size of the estate, the other bequests, and statements made to Dr. Ploss indicate that Dr. Karski intended for his *inter vivos* gift to satisfy the bequest to YIVO. In agreeing with appellees the court said:

---

**10.** We note that the record reflects that the Orphans' Court relied on Dr. Ploss' testimony. It is fair to say that it must have considered the statements' proximity in time to the gift to YIVO and Dr. Ploss' role as executive director of The American Center of Polish Culture, which stands to benefit if YIVO does not receive the bequest.

It seems to me that if we look at those agreements and the discussions that were had—and we have heard testimony with regard to that—that in making the second paragraph provision in his will, the legacy to Yivo, I do find that the purpose in doing so was to fulfill or provide security for the commitment that the decedent made to Yivo.

The court subsequently stated, "the inter vivos transfer or gift really was intended by the decedent as a fulfillment of the legacy under the will."

From the record the court could, and did, conclude that Dr. Ploss' testimony established that Dr. Karski intended the bequest in his will to act only as security for his obligation to YIVO, which was satisfied when he made the *inter vivos* gift. The record is also clear that, should YIVO succeed in its effort to receive the additional $100,000, Dr. Karski's family, and other individual beneficiaries to whom he was close (including his rescuer, Ms. Hanuszkiewicz) stood to receive relatively little.

Dr. Karski's will does not specifically state that his bequest to YIVO is for the purpose of funding the award. However, none of the other bequests in his will was made for a specific purpose. YIVO's bequest consists of 2,180 shares of Northern States Power (now X–Cel Energy) stock. At the time of the execution of the will, the stocks were worth approximately $100,000. When the stocks were liquidated after his death, the value was nearly $145,000. Finally, the letter document creating the award specifically states that "[t]he endowment will consist of a gift of $100,000.00 *in cash to be made by me to YIVO in my Will* [.]" (Emphasis added).

On these facts, we cannot say that the Orphans' Court was clearly erroneous in its conclusion that Dr. Karski intended for his bequest to YIVO to act only as security for his obligation to the organization. His intentions were best known to those closest to him. Those individuals believe he intended that his *inter vivos* gift to YIVO would adeem his bequest.

The principle applicable here was succinctly stated in *Associated Professors of Loyola Coll. of City of Baltimore v.*

*Dugan,* 137 Md. 545, 113 A. 81 (1921), when the Court of Appeals opined:

> In the case of a legacy to one towards whom the testator does not stand *in loco parentis,* the rule is that if the bequest is for a particular purpose, a subsequent gift to the legatee by the testator in his lifetime for the same purpose operates as a satisfaction of the legacy to the amount of the gift. This statement of the rule is subject to the qualification that the gift *inter vivos* must not be substantially different in kind from the legacy. There was practical agreement in the argument as to the law affecting the question now being considered. The rule we have stated is uniformly recognized and applied where the conditions make it appropriate.

*Id.* at 550, 113 A. 81.

The Court of Appeals has also made clear that "[t]he law in regard to ademption of legacies is quite well settled, and the only difficulty lies in its application to the facts of each particular case." *Wallace v. DuBois,* 65 Md. 153, 159, 4 A. 402 (1886). In a later case, the Court stated:

> [I]t is also established law in this State that when in his lifetime a testator pays to a legatee the amount of money given by a will, and such payment is intended to be in satisfaction of the legacy, the legacy is thereby adeemed. The question of whether a legacy is adeemed by a gift made by a testator to the legatee after the will was executed *depends upon the intention of the testator.*"

*Colley v. Britton,* 210 Md. 237, 246, 123 A.2d 296 (1956) (citing *Rhein v. Wheltle,* 206 Md. 1, 109 A.2d 923 (1954)) (emphasis in original). The Court also provided the following useful analysis:

> It is likewise specifically held that where a testator, even though not the parent of the beneficiary or *in loco parentis* to him, gives the legacy as compensation for his services and thus as a satisfaction of a debt, such legacy is adeemed by a subsequent payment by the testator in the amount of the legacy.... The legacy given by the testator is regarded as

conditioned upon the existence of the debt which it is to satisfy, and accordingly is adeemed by the payment of such debt, even though the testator did not occupy the parental relation to the beneficiary.

*Rhein v. Wheltle*, 206 Md. 1, 7, 109 A.2d 923 (1954).

Appellant properly notes from *Rhein, supra,* that where the testator's intention has not been stated directly, the "general rule [is] ... that ... it will be presumed that a subsequent gift was not in satisfaction of the legacy." *Id.* at 6, 109 A.2d 923. Appellee presented evidence of Dr. Karski's intention sufficient to rebut a presumption that the 1995–96 gift was not in satisfaction of the testamentary bequest.

### The Same Purpose Requirement

Appellant relies heavily upon the language of *Dugan, supra.* The instant case is more complex than *Dugan* because the bequest was not for a specific purpose.

Appellant argues that the "same purpose" requirement in *Dugan* cannot be met here because Dr. Karski attached no specific purpose to the bequest. Although no specific purpose is attached to the bequest, the Orphans' Court was correct to consider the bequest in the context of Dr. Karski's relationship with YIVO. Dr. Karski had no continuing charitable relationship with YIVO, nor did his will contain any other non-specific, charitable bequests of the magnitude of the YIVO bequest. The court was not clearly erroneous in determining that, in context, the comparatively large bequest to YIVO was intended to secure the terms of the 1993 agreement in the event that he was unable to do so in his lifetime.

### The "Not Different in Kind" Requirement

Appellant next argues that because the 1993 agreement provided for a cash bequest of $100,000, and the will included a bequest of specific shares of stock, the bequest and the *inter vivos* gift were sufficiently different in kind to reveal an intent that the *inter vivos* gift not satisfy the legacy. We disagree.

In *Dugan, supra,* the decedent's will included a cash bequest. The decedent's *inter vivos* gifts were in the form of negotiable stocks and bonds. The Court found that "[b]oth were gifts of personality, and both were dedicated to the same purpose of providing a fund for the erection of the church." 137 Md. at 551, 113 A. 81. By contrast, the Court cited a case in which an *inter vivos* gift did ·not adeem a legacy—the decedent left a pecuniary legacy to the donee, but made an *inter vivos* transfer of real estate to that person. *Id.* The nature of the property transferred was considered by the Court when it required that an *inter vivos* gift not be different in kind from the legacy sought to be adeemed. The Orphans' Court recognized that there is, in today's economy, but slight distinction between cash and cash equivalents.

This case presents a special circumstance because the facts strongly favor ademption. Had the facts relating to Dr. Karski's intentions been less clear, and the consequences to his beneficiaries less dire, by not finding ademption, the Orphans' Court would have been justified in concluding that Dr. Karski did not intend for the legacy to be adeemed by satisfaction. However, his intentions as to his family and close friends are clear. It was not clearly erroneous for the court to conclude that he would not favor a charitable organization, like YIVO, over his relatives. The result is a conclusion which overcomes a presumption that the *inter vivos* gift did not adeem his bequest to YIVO.

We recall from the record that, when Dr. Karski first proposed the endowment to YIVO in 1992, YIVO responded by suggesting that he sign an agreement that provided, in relevant part, that "The endowment will consist of a gift of $100,000 in cash to be made by me to YIVO in my Will, or in cash and/or marketable securities of the same total market value during my lifetime." For reasons unclear in the record, Dr. Karski did not sign that proposed agreement. Absent more, that proposal by YIVO, in the disjunctive, is probative evidence of its expectation that Dr. Karski would endow an award by either a lifetime gift, or a testamentary gift. That

document would, in our view, dictate against YIVO's attempt to double the endowment.

The Court of Appeals has stated, "If a testator has given a legacy in order to accomplish a certain purpose, and he subsequently accomplishes that purpose himself, the legacy is presumed to be adeemed, whether or not a presumption of ademption would have arisen otherwise." *Colley, supra,* 210 Md. at 246, 123 A.2d 296. The evidence is sufficient to support the Orphans' Court's finding that Dr. Karski intended for the testamentary bequest to YIVO to be merely security for his obligation under the 1993 letter agreement. When he made the *inter vivos* gift, the legacy in his will was adeemed.

**JUDGMENT OF THE ORPHANS' COURT FOR MONTGOMERY COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**